2007 ME 104

Carla HALL

v.

**PATRIOT MUTUAL INSURANCE
CO. et al.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Nov. 16, 2006.

Decided: Aug. 9, 2007.

Revised: Feb. 26, 2008.

N. Laurence Willey Jr., Esq., Thomas M. Matzilevich, Esq., Willey Law Offices, Bangor, for appellant.

John S. Whitman, Esq., Richardson, Whitman, Large & Badger, Portland, for appellee.

Panel: SAUFLEY, C.J.,* and CLIFFORD, ALEXANDER, LEVY, and SILVER, JJ.*

SAUFLEY, C.J.

[¶ 1] Carla Hall appeals from a summary judgment entered by the Superior Court (Hancock County, *Hjelm, J.*) in favor of Patriot Mutual Insurance Company and Dairyland Insurance Company on her claims of entitlement to underinsured vehicle coverage. Although we affirm the summary judgment entered in favor of Patriot, we vacate the summary judgment entered in favor of Dairyland because we conclude that the Dairyland policies' exclusions do not apply. Accordingly, the underinsured vehicle coverage available to Carla Hall exceeds the amount of the tortfeasor's coverage, and she may be entitled to underinsured vehicle coverage up to the amount by which the tortfeasor was underinsured.

## I. BACKGROUND

[¶ 2] The following facts are not in dispute. On October 8, 2003, Hylie Hall was

---

* Justice Howard H. Dana Jr. participated in the initial conference but retired before this opinion was certified.

* Justice Susan Calkins participated in the original opinion but retired before the motion for reconsideration was ruled on and this revised opinion issued.

fatally injured in an accident while operating his 1992 Honda motorcycle on Route 3 in Trenton. Hylie Hall's wife, Carla Hall, was not present when the accident occurred.

[¶ 3] The insurer of the other driver involved in the accident settled with Hylie Hall's estate in the amount of the bodily injury liability limit of that driver's policy, $100,000. The estate received an additional $100,000 from the driver personally.

[¶ 4] Carla Hall then filed a complaint against three other insurance companies, Patriot, Dairyland, and Allstate Insurance Company, seeking to recover pursuant to the uninsured and underinsured vehicle coverage included in the policies the Halls held with these three insurers. Allstate settled with Carla Hall for the $10,000 per person limit of its uninsured and underinsured vehicle policy, and her claim against Allstate was consequently dismissed. Carla Hall and the two remaining insurers filed cross-motions for summary judgment. *See* M.R. Civ. P. 56. Dairyland and Patriot referred to the relevant policies in their statements of material facts and attached the policies to their statements with authenticating affidavits. All parties filed appropriate statements of facts pursuant to M.R. Civ. P. 56(h).

[¶ 5] The summary judgment record demonstrates that, at the time of the accident, Hylie and Carla Hall had separate uninsured and underinsured vehicle coverage on each of the three vehicles insured by Patriot or Dairyland:

| Vehicle | Insurance Company | Registered Owner | Named Insured | Un/Underinsured Vehicle Coverage |
|---|---|---|---|---|
| 1987 Honda motorcycle | Dairyland | Carla (ME registration) | Carla | $50,000 per person $100,000 per accident |
| 1992 Honda motorcycle | Dairyland | Hylie (ME registration) | Hylie | $50,000 per person $100,000 per accident |
| 1998 Chevrolet Lumina | Patriot | Carla & Hylie (FL registration) | Carla | $50,000 per person $100,000 per accident |

Each policy contains an "other owned vehicle" exclusion that precludes coverage in certain circumstances when a person is injured in an accident while occupying a vehicle that the insured owns, but that is not insured under that particular policy.

[¶ 6] After reviewing the language of each policy, the court denied Carla Hall's motion for summary judgment and granted Patriot's and Dairyland's motions for summary judgment. The court concluded that the tortfeasor, who was insured for $100,000, was not underinsured because, although Hylie Hall was covered by his $100,000 Dairyland motorcycle policy, the language of the other policies unambiguously foreclosed Carla Hall's claims against them.[1] Hall timely appealed from the judgment.

## II. DISCUSSION

[¶ 7] We review a court's grant of summary judgment de novo, viewing all facts and inferences in favor of the nonmoving party. *Penn v. FMC Corp.*, 2006 ME 87, ¶ 6, 901 A.2d 814, 815. A summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements required by subdivision (h) show that there is no genuine issue as to

---

1. The court also entered a summary judgment against Carla Hall on a motion she filed to enforce a settlement agreement. Carla Hall does not contest this ruling on appeal.

any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c).

[¶8] To recover pursuant to an insured's uninsured or underinsured vehicle coverage, "the insured must prove a legal entitlement to recover from the tortfeasor." *Flaherty v. Allstate Ins. Co.*, 2003 ME 72, ¶23, 822 A.2d 1159, 1168. Here, Carla Hall asserts that she is the personal representative and heir of Hylie Hall and that she is entitled to recover from the driver of the car that collided with Hylie's motorcycle because that driver wrongfully caused Hylie's death. Although in most cases, a wrongful death claim [2] will have to be filed in order to establish the legal entitlement to recover, *see, e.g., Jack v. Tracy*, 1999 ME 13, ¶¶5, 10–12, 722 A.2d 869, 870–72, Carla Hall did not have to assert such a claim because the parties do not dispute that she has demonstrated the legal entitlement to recover by actually recovering through the estate from the tortfeasor to the full extent of the tortfeasor's policy.[3]

[¶9] Accordingly, we review Hall's complaint seeking coverage pursuant to the Patriot and Dairyland policies to determine (1) whether any of the three underinsured vehicle policies provide coverage and, if so, (2) whether the tortfeasor was underinsured based on a comparison of his coverage with the Halls' available underinsured vehicle coverage.

### A. Do the Patriot and Dairyland Policies Cover the Asserted Claims?

[¶10] Hylie and Carla Hall are undisputedly included as insured parties under each of the Patriot and Dairyland policies. The only question presented is whether the Patriot or Dairyland policy exclusions apply to prevent coverage in the circumstances of this case.

[¶11] In construing insurance policies, exclusions are disfavored, and we construe them strictly against the insurer. *Patrons Oxford Ins. Co. v. Harris*, 2006 ME 72, ¶7, 905 A.2d 819, 824. We have upheld policy exclusions similar to the Dairyland and Patriot exclusions against arguments that the exclusions violated insurance statutes, *e.g.*, 24–A M.R.S. § 2902 (Supp.1986);[4] 24–A M.R.S.A. § 2902–A (1990 & Supp.1992), *repealed by* P.L.1993, ch. 69, § 1 (effective Oct. 13, 1993), or were against public policy. *See Cash v. Green Mountain Ins. Co.*, 644 A.2d 456, 457–58 (Me.1994) (holding that an exclusion from coverage of "other-owned vehicles" does

---

**2.** Maine's wrongful death statute provides:

(a) Whenever the death of a person shall be caused by a wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then the person or the corporation that would have been liable if death had not ensued shall be liable for damages as provided in this section, notwithstanding the death of the person injured and although the death shall have been caused under such circumstances as shall amount to a felony.

(b) Every such action must be brought by and in the name of the personal representa-

tive of the deceased person, and the amount recovered in every such action, except as otherwise provided, is for the exclusive benefit of the surviving spouse if no minor children. . . .

18–A M.R.S. § 2–804(2006).

**3.** This case does not require us to consider whether a plaintiff may establish a legal entitlement to recover without bringing a wrongful death or tort claim when the decedent's estate has settled with the tortfeasor for an amount *less than* the tortfeasor's policy limits.

**4.** This statute has since been amended, most recently by P.L.2005, ch. 591, § 1 (effective Aug. 23, 2006).

667

not violate an established rule of law or tend to harm the interests of society); *Bear v. U.S. Fidelity & Guaranty Co.*, 519 A.2d 180, 181–82 (Me.1986) (holding that an exclusion of coverage for any injury " 'sustained by any person … [w]hile occupying, or when struck by, any vehicle owned by you … which is not insured for this coverage under this policy,' " is not against public policy); *Gross v. Green Mountain Ins. Co.*, 506 A.2d 1139, 1141–42 (Me.1986) (upholding the clear and unambiguous language of an exclusion from coverage for " 'bodily injury sustained by any person … [w]hile *occupying,* or when struck by, any motor vehicle owned by you … which is not insured for this coverage under this policy' " and holding that the exclusion did not violate the uninsured vehicle statute and was not against public policy) (emphasis in original).

[¶ 12] The United States Court of Appeals for the First Circuit construed a policy similar to those at issue in the present case, when a policy exclusion unambiguously precluded coverage for the surviving spouse of a man killed in an automobile accident while occupying a vehicle not covered by the policy. *Maurice v. State Farm Mut. Auto. Ins. Co.*, 235 F.3d 7, 9–10 (1st Cir.2000). There, the First Circuit held that the applicability of an exclusion was "nose-on-the-face plain" when the exclusion provided that "THERE IS NO COVERAGE … FOR BODILY INJURY TO AN INSURED … WHILE OCCUPYING A MOTOR VEHICLE OWNED BY YOU [OR] YOUR SPOUSE … IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY." *Id.* at 9–10 (emphasis in original).

[¶ 13] To evaluate whether the Halls' policy exclusions apply, we interpret each policy's language. If an exclusion in a policy is ambiguous, we interpret it strictly against the insurer. *Patrons Ox-*

*ford Ins. Co.*, 2006 ME 72, ¶ 7, 905 A.2d at 824.

1. The Patriot Policy

[¶ 14] The Patriot policy provides uninsured and underinsured vehicle coverage for bodily injury suffered in an accident with an uninsured or underinsured vehicle:

We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

The policy excludes from its uninsured and underinsured vehicle coverage, however, any damages for an injury suffered by the insured while using a vehicle that is registered to the insured but not covered by the Patriot policy:

EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

For purposes of the Patriot uninsured or underinsured vehicle policy, "insured" includes "[y]ou or any 'family member.' " The term "you" in the policy includes both:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

[¶ 15] The language of this policy's exclusion prohibits recovery when an "insured" suffers bodily injury while occupying a motor vehicle that is owned by the "insured" but is not covered by the policy. According to the policy's clear language, the exclusion applies to bodily injury sustained by an "insured," a term that includes the defined term "you," while occupying a vehicle owned by the "insured" that is not covered by the same policy. As spouses sharing a residence, both Hylie Hall and Carla Hall were included in the definition of "you." The exclusion applies, therefore, if either spouse was injured while occupying a vehicle, owned by either of them, that was not insured by the Patriot policy. Here, Hylie Hall—an insured—occupied a motorcycle he owned that was not insured by the Patriot policy. Like the exclusions construed in *Gross,* 506 A.2d at 1141, and *Maurice,* 235 F.3d at 9–10, the exclusion in the Patriot policy unambiguously applies in the circumstances of this case, and Carla Hall is not entitled to underinsured vehicle coverage pursuant to this policy.

### 2. The Dairyland Policies

#### a. Hylie Hall's Policy

[¶ 16] The parties do not dispute that Hylie Hall would be entitled to coverage pursuant to this policy if the tortfeasor were underinsured. Hylie Hall was occupying the motorcycle insured by his Dairyland policy—not some other vehicle owned by him or his wife—when he was involved in the accident. The exclusion in the policy does not, therefore, apply to him, and coverage is available if the tortfeasor is underinsured. We will be able to determine whether the tortfeasor was underinsured only after we ascertain how much

underinsured vehicle coverage was available to the Halls in the aggregate. *See* 24–A M.R.S. § 2902(1) (2005);[5] *Connolly v. Royal Globe Ins. Co.,* 455 A.2d 932, 935 (Me.1983). Accordingly, we examine Carla Hall's Dairyland policy to determine whether it provides coverage that must be aggregated.

#### b. Carla Hall's Policy

[¶ 17] Carla Hall's Dairyland "Plain Talk Motorcycle Policy" provides uninsured or underinsured vehicle coverage for bodily injuries sustained in an accident with an uninsured or underinsured vehicle: "We promise to pay *damages you're* legally entitled to receive from the owner or operator of an uninsured *motor vehicle* because of bodily injury." (Emphasis in original.) The policy covers "bodily injury, including loss of services, sickness, disease or death which results from the injury, caused by a *motor vehicle accident* and suffered by you." (Emphasis in original.)

[¶ 18] The Dairyland policy contains the following exclusion, however: "Anyone *occupying* a *motor vehicle* owned by *you* or furnished by *your* regular use and not insured under this insurance isn't protected by this insurance." (Emphasis in original.) Throughout the policy, the term "you" is defined to include both "the person named on the declarations page and that person's husband or wife if a resident of the same household."

[¶ 19] The exclusion in this policy applies to "anyone" occupying a vehicle that "you" own, but which is not insured under the policy. Although the definition of "you" includes both the named insured and a spouse residing in the same household, the exclusion explicitly states that it applies to "anyone" occupying the vehicle,

---

**5.** Since the time of the accident, the language of subsection (1) has been amended slightly, but not in a way that affects this case. *See*

P.L.2005, ch. 591, § 1 (effective Aug. 23, 2006) (codified at 24–A M.R.S. § 2902(1) (2006)).

not to "you" as an "insured," as in the Patriot policy. The policy does not define the term "anyone."

[¶ 20] Viewed one way, the term "anyone" would be interpreted to mean any individual occupant of the vehicle. Because Carla Hall was not an individual occupant of the vehicle, the exclusion would not apply to her. Under a competing view, "anyone" would be interpreted to include the plural "you" defined in the policy—that is, the named insured and the spouse sharing the insured's residence. Following this interpretation, Carla Hall would be deemed to have occupied the vehicle because she and Hylie Hall would be considered as a single "you" for purposes of the policy.

[¶ 21] Because there are two ways to interpret the policy, it is ambiguous and must be interpreted strictly against Dairyland. *See Patrons Oxford Ins. Co.*, 2006 ME 72, ¶ 7, 905 A.2d at 824. The term "anyone" is not defined in the policy, and therefore the term must take its ordinary meaning, especially in the context of a "Plain Talk" policy. *See Found. for Blood Research v. St. Paul Marine & Fire Ins. Co.*, 1999 ME 87, ¶ 12, 730 A.2d 175, 180. "Anyone" is generally understood to mean, "any person indiscriminately: ANYBODY." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (2002). The term is in the singular and signifies, in the context of the policy, any person occupying a vehicle owned by Carla or Hylie Hall who is not insured by the policy. Carla Hall was not a person occupying the vehicle. Accordingly, she is not a person to whom the policy exclusion applies. The policy therefore provides coverage if Carla Hall can

demonstrate that she suffered a bodily injury within the meaning of the policy.

[¶ 22] Generally, a person alleging loss of consortium is not considered to have alleged a bodily injury. *Gillchrest v. Brown*, 532 A.2d 692, 693 (Me.1987). Rather, loss of consortium is an injury that is understood to derive from the bodily injury of another. *Id.* The Dairyland policy, however, specifically defines "bodily injury" more broadly than the common understanding of the term to include "loss of services ... suffered by you." The term "loss of services" is equivalent to loss of consortium and is therefore included as a type of loss that is compensable under the Wrongful Death Act.[6] *See Pelletier v. Fort Kent Golf Club*, 662 A.2d 220, 224 (Me. 1995) (stating that a spouse may recover for loss of consortium when there is "an actual loss of services or affection"). In these circumstances, the policy's express terms include Carla Hall's alleged injury as a form of bodily injury. Carla Hall is, therefore, entitled to coverage under her own Dairyland policy if the tortfeasor is underinsured.

### B. Was the Tortfeasor Underinsured?

[¶ 23] When multiple insurance policies cover an accident, we compare the amount of the tortfeasor's coverage with the total amount of uninsured or underinsured vehicle coverage available to determine whether the vehicle was underinsured. *See Connolly*, 455 A.2d at 935. The injured party may recover pursuant to his or her uninsured or underinsured vehicle policy in an amount that secures to the injured party the amount of coverage that would have been available had the tortfea-

---

**6.** Because Carla Hall would have been required to assert her loss of consortium claim through a wrongful death claim as the personal representative of the estate if it had been necessary to sue the tortfeasor, we include Carla Hall's loss of consortium claim as a claim of the estate. *See* 18-A M.R.S. § 2-804(b) (2006) (permitting recovery of up to $400,000 "for the loss of comfort, society and companionship of the deceased").

sor been insured to the same extent as the injured party. *Id.*

 [¶ 24] Here, the tortfeasor had insurance coverage of $100,000. Hylie Hall's estate had an aggregate of $160,000 available in uninsured or underinsured vehicle coverage: $100,000 (the "each accident" limit) from Hylie Hall's Dairyland motorcycle insurance policy; $50,000 (the "each person" limit) from Carla Hall's Dairyland motorcycle policy; and $10,000 from the Allstate policy. *See Connolly,* 455 A.2d at 935. Hylie Hall's estate recovered $100,000 from the tortfeasor's insurer, which means that the tortfeasor was underinsured by the amount of $60,000.[7] Allstate has already paid up to its policy limit of $10,000. Carla Hall therefore stands to recover through the estate up to $50,000 from Dairyland if she can establish the amount of her damages on remand. *See Wescott v. Allstate Ins.,* 397 A.2d 156, 164 (Me.1979) (holding that a person seeking to recover pursuant to an uninsured or underinsured vehicle policy must establish the amount of damages). Because this matter has not yet proceeded to fact-finding or agreement regarding the total damages suffered by Hylie Hall's estate, we remand the matter to the Superior Court for further proceedings consistent with this opinion.

The entry is:

Summary judgment in favor of Patriot affirmed. Summary judgment in favor of Dairyland vacated and remanded for further proceedings consistent with this opinion. Denial of Carla Hall's motion for summary judgment affirmed. Patriot's

and Dairyland's requests for sanctions denied.

---

**7.** Although the tortfeasor paid an additional $100,000 to Hylie Hall's estate, this payment cannot be construed as insurance to be compared with the Halls' uninsured or underinsured vehicle coverage pursuant to the uninsured vehicle coverage statute. *See* 24–A M.R.S. § 2902(1) (2005) (defining an underinsured motor vehicle as "a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for under the motorist's financial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage").