STATE OF MAINE RECEIVED & FILED SUPERIOR COURT
ANDROSCOGGIN, ss. CIVIL ACTION
DOCKET NO. CV-08-38
JAW-AND- 12/4/2008

DEC 04 2008
ANDROSCOGGIN
SUPERIOR COURT

LARRY ENOS and JANET ENOS,

    Plaintiffs

                                  DECISION AND ORDER

v.

ALLSTATE INSURANCE COMPANY,

    Defendant

## BEFORE THE COURT

This matter is before the Court on the defendant's motion for summary judgment and the plaintiffs' cross-motion for summary judgment.

## BACKGROUND AND PROCEDURAL HISTORY

This case arises out of the alleged breach of a homeowners' insurance policy. The plaintiffs, Larry Enos and Janet Enos (the Enoses), had an insurance policy with the defendant, Allstate Insurance Company (Allstate) that covered their home on the Plains Road in Turner, Maine. The Enoses' neighbors, Robert and Beverly Leavitt (the Leavitts), filed suit against the Enoses in February of 2005 in a property dispute. Allstate refused to defend the Enoses in the suit, and the Enoses retained their own attorney and successfully defended themselves. They incurred almost $40,000.00 in attorney fees and now seek interest, costs and attorney fees from Allstate, claiming that Allstate breached its duty to defend them in the matter pursuant to their policy.

The Leavitts' suit against the Enoses, *Robert and Beverly Leavitt v. Janet Enos, et al.* (*Leavitt v. Enos*), involved a complicated series of land transactions by

the parties and their predecessors in title, giving rise to a dispute over a triangle-shaped parcel of land and the right to use a discontinued road to gain access to the parties' respective properties.[1] After learning of the suit, the Enoses contacted Allstate to discuss the complaint and determine Allstate's obligation to provide legal representation. Allstate claimed it did not have an obligation because the action was primarily one for equitable relief in the form of a declaration concerning property rights, as opposed to a claim for money damages for property damage or bodily injury arising from an occurrence.[2] The complaint did include a claim seeking money damages for property damage in Count III, which sought damages under Maine's trespass statute. Count III alleged that the Enoses' actions, such as cutting fences and nailing signs to trees, deprived their neighbors of economic value. Allstate determined that Count III was not covered because it was not accidental, which meant that it fell outside of Allstate's definition of occurrence.[3]

Following Allstate's denial of coverage, the Enoses' attorney, Attorney Wade, communicated disagreement with Allstate's position and requested that Allstate reconsider its denial. Allstate's adjuster Marcia Mayo (Mayo) then sent a letter dated March 31 to the Enoses, stating that Allstate had reconsidered its

---

[1] In their complaint, the Leavitts asserted claims for: declaratory judgment (Count I); boundary by acquiescence (Count II); trespass (Count III); prescriptive easement (Count IV); estoppel (Count V); nuisance (Count VI); and punitive damages (Count VII).

[2] The policy at issue provides that Allstate will "pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence . . . ."

[3] Count III of *Leavitt v. Enos* stated that the above acts were performed "intentionally and knowingly," which Allstate claimed triggered the policy's exclusion for damage "either intended by or which may have been reasonably expected to result from the intentional acts or criminal acts or omissions of any insured person."

2

decision and had decided to cover the Enoses with respect to Count III only. After the Enoses objected to the limited defense of Count III only, Allstate ultimately agreed to provide the Enoses with a defense to all counts, subject to a reservation of the right to deny coverage for a judgment awarding damages for intended property damage. Allstate also reserved the right to settle Count III and to discontinue its defense in order to limit Allstate's potential liability. Mayo then designated Attorney Poliquin of the law firm of Norman, Hanson & Detroy, LLC to represent the Enoses in the action. By letter dated April 19, Attorney Wade advised Mayo that the Enoses declined to be represented by Attorney Poliquin due to a conflict of interest, and instead the Enoses retained Attorney Wade's firm to represent them. In response, Mayo informed the Enoses that Allstate considered the Enoses' rejection of Attorney Poliquin as an unjustified breach of policy terms and Allstate subsequently declined to pay fees for services provided by Attorney Wade's firm.

The defendant filed a motion for summary judgment on June 30, 2008, claiming that it had no duty to defend the plaintiffs in the underlying suit, and even if it had a duty to defend, it fulfilled any such duty. The Enoses filed a cross-motion for summary judgment on August 11, 2008, arguing that they had a right to control their defense and select defense counsel because Allstate offered representation subject to a reservation to deny coverage.

## DISCUSSION

### I. Standard of Review.

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770

3

A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. A party wishing to avoid summary judgment must present a prima facie case for the claim or defense that is asserted. *Reliance National Indemnity v. Knowles Industrial Services*, 2005 ME 29, ¶ 9, 868 A.2d 220, 224-25. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

## II. Duty to Defend

The determination of an insurer's duty to defend is a question of law the court decides by "comparing the allegations in the underlying complaint with the provisions of the insurance policy." *Baywood Corp. v. Maine Bonding & Casualty Co.*, 628 A.2d 1029, 1030 (Me. 1993). The insurer has a duty to defend the insured against the claims brought against the insured if the complaint shows, through general allegations, a possibility that the liability claim falls within the insurance coverage. *Union Mut. Fire Ins. Co. v. Town of Topsham*, 441 A.2d 1012, 1015 (Me. 1982). If the allegations in the underlying action are within the risk insured against and there is any potential basis for recovery, the insurer must defend the insured regardless of the actual facts on which the insured's ultimate liability may be based. *Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350, 1352 (Me. 1996). There may be no duty to defend for equitable actions that are not seeking damages. *See Patrons Oxford Mut. Ins, Co. v. Marois*, 573 A.2d 16, 20 (Me.

4

1990) (finding no duty to defend an administrative proceeding brought by the Department of Environmental Protection to compel clean-up because the agency action was not a suit seeking damages).

In construing insurance policies, exclusions are disfavored, and the Law Court construes them strictly against the insurer. *Hall v. Patriot Mut. Ins. Co.*, 2007 ME 104, ¶ 11, 942 A.2d 663, 666. To evaluate whether policy exclusions apply, the court interprets the policy's language. *Hall v. Patriot Mut. Ins. Co.*, 2007 ME 104, ¶ 13, 942 A.2d at 667. If an exclusion in a policy is ambiguous, the court interprets it strictly against the insurer. *Patrons Oxford Ins. Co. v. Harris*, 2006 ME 72, ¶ 7, 905 A.2d 819, 824.

The Enoses' policy contains an exclusion, extending coverage only to harms arising from an "occurrence," which the policy defines as "an accident, including continuous or repeated exposure to conditions, that result[s] in bodily injury or property damage." The policy specifically excludes from coverage any damages resulting from an intentional act by the insured. Allstate argues that all the Leavitts' allegations against the Enoses involve intentional acts by the Enoses and liability for such acts therefore is excluded from coverage by the Enoses' insurance policy. If, however, under any circumstances any of the harms claimed in the Leavitts' lawsuit could constitute an accidental unintended consequence of an act allegedly committed intentionally by the Enoses, the Enoses' liability for such harm would be the result of an unintentional "occurrence" within the coverage of the Allstate policy. *See Massachusetts Bay Ins. Co. v. Ferraiolo Constr. Co.*, 584 A.2d 608, 610 (Me. 1990).

The Law Court has considered the motives behind the intentional entry onto the real property of another when evaluating whether an intentional

5

exclusion applied. *See Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350 (Me. 1996). In *Gibson*, the plaintiffs were alleged to have intentionally entered upon their neighbor's land. *Id.* at 1352. The Court found that entry upon their land was intentional. *Id.* at 1353. The Court refused to apply the exclusion, however, reasoning that though the entry was intentional, the consequences of that act, the injury to the landowner, could nonetheless be unintentional and covered under the liability policy. *Id.* It was not enough for the insured to intend to perform an act that caused injury if the insured did not also intend to cause the injury itself. *Royal Ins. Co. v. Pinette*, 2000 ME 155, ¶ 6, 756 A.2d 520, 523 (explaining *Gibson*). An intentional act on the part of the insured forming the basis of an intentional tort action can still be an occurrence requiring coverage, and thus a duty to defend, if the consequences of the intentional act could be deemed unintentional under one set of facts. *See Gibson*, 673 A.2d at 1353.

In this case, Allstate contends the underlying complaint does not assert liabilities potentially covered by the policy because it does not seek money damages for property damage resulting from physical injury, other than damages that should reasonably be expected to result from the Enoses' intentional acts. Allstate attempts to distinguish this case from *Gibson* based on the fact that Allstate's policy incorporates an objective standard into the exclusion for damages caused intentionally. The policy excludes damages "which may reasonably be expected to result from the intentional acts or omissions of any insured person." In contrast, the policy in *Gibson* excluded "any damages resulting from an intentional act by the insured."

Allstate's effort to distinguish this case from *Gibson* is unconvincing. The Enoses were alleged to have intentionally entered upon the Leavitt's land. The

6

Leavitts' complaint expressly claims both damage to property and loss of use of property directly resulting from the alleged damage.[4] Allstate's policy does cover property damages arising from an occurrence, that is an act that is not intentionally committed by the Enoses. The Enoses may have intentionally entered and occupied the disputed parcel of land, however, it is not clear, based on the underlying complaint whether the Enoses intended to cause injury to the Leavitts. The damages allegedly caused by the Enoses may not have been intended, or reasonably expected from their intentional acts. When the Enoses posted signs and removed fences they may have reasonably believed the land was legally theirs and their acts would not cause injury to their neighbors. In addition, exclusions are disfavored, and the court shall construe them strictly against the insurer. Thus, the policy does cover the underlying complaint, and Allstate did have a duty to defend the Enoses in the underlying dispute.

### III. Conflict of Interest

Allstate contends that even if it had a duty to defend, it fulfilled this duty by providing the Enoses with representation by Attorney Poliquin. Allstate's policy reserves the right to select the attorney to cover those insured under its policy and the Enoses refused to accept the services of the attorney selected by Allstate. The Enoses counter that they were not obligated to accept Attorney Poliquin's services because there was a conflict of interest that entitled them to select another attorney. The Enoses argue that they had a right to control their defense because Allstate reserved its right to deny coverage when it agreed to defend them in the underlying suit.

---

[4] The alleged damage to the property in question included the claim that the Enoses cut fences and nailed "no trespassing" signs to trees.

In *Patrons Oxford Ins. Co. v. Harris*, the Law Court addressed the tensions that exist between an insurer that reserves the right to deny coverage under the policy and the impact of that decision on the insured. 2006 ME 72, ¶ 13, 905 A.2d at 825. An insurer does not breach the insurance agreement by electing to defend its insured under a reservation of rights. *Id.* ¶ 15, 905 A.2d at 825-26. However, the Court stated that an insurer who reserves the right to deny coverage can not control the defense of a lawsuit brought against its insured by an injured party. *Id.* Stated simply, insurers lose their rights to control defenses when qualified defenses are offered. The *Patrons Oxford* Court specifically held that if the insurer offers to defend the claim, but also provides notice that it may decline coverage if the claim is successful, the insured may opt to settle the claim without the permission or consent of the insurer. *Id.* at 826-27.

The Enoses contend that they had the right to control their defense because Allstate reserved the right to deny coverage. They claim that Allstate erred in continuing to control the defense of the *Leavitt v. Enos* action after choosing to defend under a reservation of rights. The Enoses point to the *Patrons Oxford* decision and argue that the ability to settle a claim for which an insurer may ultimately be liable, without the consent or permission of the insurer, involves greater authority or measure of control than the mere ability of the insured to choose their own attorney in the face of a potential conflict of interest. Thus, the Enoses claim it was within their authority to select defense counsel.

The Enoses maintain that they selected their own defense counsel due to a conflict of interest with Attorney Poliquin's firm, which may have had an effect

8

on the trial in the underlying case.[5]  According to the Enoses, the fact that the firm selected by Allstate regularly represented Allstate customers and Allstate itself created a potential conflict of interest.  The Enoses argue that the firm has a pecuniary interest in preserving its relationship with Allstate.

Allstate contends that it retained separate Maine counsel to represent it with respect to coverage issues than it did to represent the Enoses in the underlying suit to avoid potential conflict.  Allstate asserts that the *Patrons Oxford* decision does not address the policy term reserving to the insurer the right to select counsel, and that to penalize insurers by invalidating this term is an unnecessary deterrent to the reservation of legitimate policy limitations.  It is Allstate's contention that this would unfairly deny the insurer, who is required to finance often expensive and protracted litigation, the ability to avoid over-litigating and over-billing.

The Law Court has not held that the insured's right to control the defense due to an insurer's reservation of rights provides the insured with the right to select defense counsel despite an express policy limitation.  This Court is reluctant to extend that right as a matter of law.  The tension that may exist between the insurer and the insured in these matters does not automatically create a conflict of interest.  The professional and ethical rules governing the Maine Bar make clear that defense counsel's attorney-client obligations run to the

---

[5] A conflict of interest occurs where "there is a substantial risk that the lawyer's representation of one client would be materially and adversely affected by the lawyer's duties to another current client, to a former client, *or to a third person, or by the lawyer's own interests*." M. Bar R. 3.4(b)(1) (emphasis added).

insured, not the insurer.[6] The insurer also has a duty to exercise good faith respecting the insured's personal interest and liabilities arise out of breach of that duty.

Although Allstate's policy reserves its right to select defense counsel, the Enoses were not obligated to accept the insurer's attorney of choice if there was indeed a substantial risk that the attorney's representation would be materially and adversely affected by a conflict of interest. The question of whether a substantial risk of conflict was present in this case is a question of fact. Based on the evidence presented, this Court cannot find, as a matter of law, that representation by Attorney Poliquin created the substantial risk of a conflict of interest, which would have affected the trial in the underlying matter.

## CONCLUSION

The defendant's motion for summary judgment is DENIED. The plaintiff's cross-motion for summary judgment is DENIED.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATED: 1|3|08

_____
Joyce A. Wheeler, Justice

---

[6] Maine Professional Ethics Opinion No. 63 (Jan. 7, 1986) (finding that the attorney represents the insured, notwithstanding that he is hired and paid by the insurance company. The attorney has the duty to treat the insured with the full measure of care accorded to all client relationships).

10