STATE OF MAINE                                                SUPERIOR COURT
PENOBSCOT COUNTY                                                 CIVIL ACTION
                                                         PENSC-CIV-2022-00001

NADA WILLIAMS-WHITE,            )
                               )
        Plaintiff,             )
                               )
                               )        ORDER on PLAINTIFF'S MOTION FOR
v.                             )        SUMMARY JUDGMENT and
                               )        DEFENDANT'S CROSS-MOTION FOR
INTERINSURANCE EXCHANGE        )        SUMMARY JUDGMENT
OF THE AUTOMOBILE CLUB,        )
                               )
        Defendant.             )

Before the Court are Plaintiff Nada Williams-White's Motion for Summary Judgment and

Defendant Interinsurance Exchange of the Automobile Club's Cross-Motion for Summary

Judgment, both pursuant to M.R. Civ. P. 56. The central issue before the Court is whether

Williams-White can recover under the underinsured motorist coverage provision in her own

insurance policy for injuries she sustained while in a vehicle not covered by the policy. Even when

viewed in the light most favorable to Williams-White, the facts show that, as a matter of law, the

"other-owned vehicle" exclusion and the "named driver" exclusion in her insurance policy

unambiguously excludes her from recovering for this accident. Additionally, these exclusions do

not contravene Maine's insurance statutes nor well-established Maine precedent. Therefore,

Williams-White is not entitled to summary judgment and her Motion is **DENIED**, and

Interinsurance Exchange's Cross-Motion is **GRANTED**.

I.    FACTUAL BACKGROUND

This case stems from a motor vehicle accident which resulted in Plaintiff Nada Williams-

White ("Williams-White") suffering significant injuries. Williams-White sought to recover monies

through an insurance policy she held with Defendant Interinsurance Exchange of the Automobile

1

Club ("Interinsurance"). The following facts are taken from the Summary Judgment record and are undisputed, being taken from a joint Statement of Undisputed Material Fact ("Joint S.M.F.") to which both parties stipulated.

On July 10, 2019, Williams-White was riding as a passenger on a three-wheeled motorcycle driven by Calvin White ("Calvin") when he lost control, and the motorcycle crashed (the "Crash"). (Joint S.M.F. ¶¶ 1-5.) The Crash occurred due to Calvin's negligence, and Williams-White is legally entitled to recover from him for her damages. (Joint S.M.F. ¶ 6.) Williams-White suffered injuries caused by the Crash, and her damages exceed $100,000. (Joint S.M.F. ¶¶ 8-9.) Calvin was the owner of the motorcycle and carried an insurance policy ("Motorcycle Policy") on the motorcycle with a policy limit of $100,000. per occurrence. (Joint S.M.F. ¶¶ 7, 10.) Williams-White was not a named insured under the Motorcycle Policy, and the Motorcycle Policy's insurance carrier paid Williams-White the policy limit of $100,000. to compensate her for the damages resulting from the Crash, thereby exhausting the limits of all insurance policies held by Calvin related to the motorcycle. (Joint S.M.F. ¶¶ 11-13.)

Williams-White carried an automobile insurance policy ("Interinsurance Policy") with Interinsurance that provided uninsured and underinsured motorist coverage in the amount of up to $250,000. per person and $500,000. per occurrence, and which was in effect on the date of the Crash. (Joint S.M.F. ¶¶ 15, 17.) Williams-White is the named insured under the Interinsurance Policy. (Joint S.M.F. ¶¶ 19-20.) Calvin is not a named insured under the Interinsurance Policy, but he is the "resident" spouse of Williams-White under the Interinsurance Policy. (Joint S.M.F. ¶¶ 19-20.) Calvin's motorcycle is not an insured vehicle under the Interinsurance Policy. (Joint S.M.F. ¶ 18.)

2

Interinsurance was notified of and consented to Williams-White's settlement under the Motorcycle Policy. (Joint S.M.F. ¶ 21.) Subsequent to the Motorcycle Policy settlement, Williams-White made a claim under the underinsured portion of the Interinsurance Policy to cover her damages beyond the $100,000. she had already recovered. (Joint S.M.F. ¶ 22.) In response to this claim, Interinsurance has asserted that it is not obligated to provide coverage due to the application of the "other-owned vehicle" exclusion in the uninsured and underinsured motorist coverage of the Interinsurance Policy and due to an application of the "named driver" exclusion in the Interinsurance Policy. (Joint S.M.F. ¶ 23.) The relevant language to the exclusionary clause in the Interinsurance Policy provides in relevant part:

## DEFINITIONS

Throughout this policy:

1. Certain words and phrases have a defined meaning when printed in *bold italic type*. We use the following definitions:

. . .

*Bodily injury* - means bodily harm, sickness, or disease, including death therefrom.

. . .

*Occupying, occupied* or *occupancy* - mean being in or upon, getting in, out, upon, or off.

*Person* - means a human being.

. . .

*Resident, reside* or *residing* - mean actually living in the household you live in.

. . .

2. "We", "us", "our" or "Exchange" - mean the Interinsurance Exchange of the Automobile Club.

3

3. "You" or "your" - mean any named insured on the declarations page. If there is only one named insured on the declarations page and that insured is a *person*, "you" or "your" includes the *resident* spouse of that *person*.

. . .

## PART III - UNINSURED MOTORIST COVERAGE

### COVERAGE E - UNINSURED AND UNDERINSURED MOTORIST COVERAGE - BODILY INJURY

#### OUR PROMISE TO YOU - COVERAGE E
1. We will pay compensatory damages which an *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* or *underinsured motor vehicle* because of *bodily injury*:

      a. sustained by an *insured*; and

      b. caused by an accident arising from the ownership or *use* of the *uninsured motor vehicle* or *underinsured motor vehicle*.

. . .

#### PERSONS INSURED - PART III

Under COVERAGE E, *insured* means:
1. You.

. . .

#### ADDITIONAL DEFINITIONS - PART III

*Motor vehicle* - means a self-propelled vehicle designed for and used primarily on streets and highways to transport persons or property, but does not include:

      a. a snowmobile;

      b. an all-terrain vehicle, unless registered for highway use or is operated on a highway;

      c. a motorized wheelchair or an electric personal assistive mobility device;

      d. any vehicle operated exclusively on tracks.

*Underinsured motor vehicle* - means a *motor vehicle* or *trailer* of any type for which insurance coverage is provided, but in amounts less than either:

      a. the minimum limits for bodily injury liability insurance provided for under the financial responsibility laws of the state of Maine; or

      b. the limits of the injured party's uninsured motorist coverage.

. . .

4

## WHAT IS NOT COVERED - EXCLUSIONS PART III

COVERAGE E does not apply to *bodily injury* sustained:
1. By you, while *occupying* or when struck by any *motor vehicle* you own which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

(Joint S.M.F. Ex. A, at 14-15, 22-23.)

## II.  PROCEDURAL POSTURE

Williams-White filed the Complaint in this action on January 6, 2022, asserting a claim for breach of contract against Interinsurance for refusing to pay her underinsured motorist coverage claim. On March 18, 2022, Williams-White filed this Partial Summary Judgment Motion ("Motion") and the Parties' joint Statement of Undisputed Material Fact. On April 15, 2022, Interinsurance filed its opposition to the Motion and Cross-Motion for Summary Judgment ("Cross-Motion"). On April 29, 2022, Williams-White filed her reply to the Motion, and opposition to the Cross-Motion. On May 9, 2022, Interinsurance filed its reply to the Cross-Motion. The Motion and Cross-Motion, both now fully briefed, are in order for decision.

## III.  SUMMARY JUDGMENT STANDARD

An entry of summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *See Dyer v. DOT*, 2008 ME 106, ¶ 14, 951 A.2d 821; *see also* M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (citations omitted). At summary judgment, a court reviews the evidence in the light most favorable to the non-moving party. *See Curtis v. Porter*, 2001 ME 158, ¶ 6, 784 A.2d 18. The meaning of the language in an insurance contract is a question of law and "whether the underlying facts bring the claim within the policy exclusion is likewise a matter of

5

law." *Allstate Inc. Co. v. Government Employees Ins. Co.*, 263 A.2d 78, 80 (Me. 1970); *see also Foremost Ins. Co. v. Levesque*, 2005 ME 34, ¶ 7, 868 A.2d 244; *Peerless Ins. Co. v. Wood*, 685 A.2d 1173 (Me. 1996).

## IV. DISCUSSION

At issue in these motions is whether Williams-White can recover for her injuries sustained in the Crash through the uninsured and underinsured coverage in her insurance policy. To resolve the motions, the Court must determine the answer to two main questions. First, does the "other-owned vehicle" exclusion in the insurance policy at issue unambiguously exclude Williams-White from recovering for her injuries stemming from the Crash? Second, if the "other-owned vehicle" exclusion in the policy unambiguously bars Williams-White's recovery, is the exclusion permissible under Maine's insurance statutes and Maine precedent? The Court will address both of these issues in turn below.[1]

### A. The Language of the Interinsurance Policy Is Unambiguous and It Bars Williams-White's Recovery for Injuries Sustained in the Crash.

Williams-White argues that the language of the Interinsurance Policy is ambiguous, and that ambiguities should be construed against Interinsurance, as the insurer, under established Maine law. Specifically, Williams-White argues that certain instances of "you" and "your", although both are defined terms in the Interinsurance Policy, should not be read with the meaning

---

[1] The Court acknowledges that Interinsurance raised the Interinsurance Policy's "named driver" exclusion as an alternate argument justifying denying Williams-White recovery for injuries sustained in the Crash, and that Williams-White has argued against this justification in her Motion. However, because the "other owned vehicle" exclusion sufficiently resolves the Motion and Cross-Motion, the Court will not extensively discuss the "named driver" exclusion. In brief, the plain language of the "named driver" exclusion in the Interinsurance Policy unambiguously prohibits Williams-White from any recovery in this instance. Additionally, this Court notes that while the Law Court has addressed "other-owned vehicle" exclusions several times, the Law Court has not yet addressed the "named driver" exclusions in its decisions. *See e.g., Hall v. Patriot Mut. Ins. Co.*, 2007 ME 104, ¶¶ 11-12, 942 A.2d 663. Nevertheless, "named driver" exclusions affect insurance policies in a similar way to "other-owned vehicle" exclusions and do not facially violate Maine insurance statutes. Furthermore, "named driver" exclusions are, like "other-owned vehicle" exclusions, justifiable as a matter of public policy.

of "you" and "your" as defined where the words are not bolded and italicized. Williams-White suggests that if this ambiguity were construed against Interinsurance, the "other-owned vehicle" exclusion in the Interinsurance Policy would not prevent her from recovering. The Court disagrees with Williams-White's reading of the contract, finding that the definition of "you" and "your" should apply throughout the contract. When the contract is read this way, it unambiguously bars Williams-White from recovering in this case.

### i. "You" Is Defined in the Interinsurance Policy and Has the Meaning Established in the Definitions Throughout the Interinsurance Policy

To come to a decision on the meaning of "you" in the Interinsurance Policy, the Court must interpret the language of the Interinsurance Policy. When a court interprets an insurance policy, if the language is unambiguous, a court must "interpret it in accordance with its plain meaning," but a court construes "ambiguous policy language strictly against the insurance company and liberally in favor of the policy holder." *Haskell v. State Farm Fire & Cas. Co.*, 2020 ME 88, ¶ 15, 236 A.3d 458. "When a term is expressly defined within the four corners of an insurance policy, an inquiring court must defer to that definition and thereby give effect to the intent of the parties." *Medical Mut. Ins. Co. v. Indian Harbor Ins. Co.*, 583 F.3d 57, 60 (1st Cir. 2009) (citing *In re Blinds to Go Share Purchase Litig.*, 443 F.3d 1, 7 (1st Cir. 2006) (interpreting an insurance policy in a diversity jurisdiction case under Maine law) ("Where the parties to a contract take pains to define a key term specifically, their dealings under the contract are governed by that definition.")). A court reads the policy's language "from the perspective of an average person untrained in either the law or the insurance field in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." *Kelly v. North East Ins. Co.*, 2017 ME 166, ¶ 5, 168 A.3d 779.

Nevertheless, although it may be true that the language of an insurance policy is complex and some portions hard to understand at first glance, this does not "justify excising such provisions

7

from a contract [as only] when they are ambiguous is their interpretation affected, and the insured given the benefit of the doubt." *Patrons v. Oxford Mut. Ins. Co. v. Marois*, 573 A.2d 16, 19 (Me. 1990). An insurance policy must be examined as a whole to determine whether it is ambiguous, and "a dispute over the meaning of a term, 'or [the] inability of the insured to understand the policy, does not render the contract ambiguous.'" *Progressive Northwest Ins. Co. v. Metro. Prop. & Cas. Ins. Co.*, 2021 ME 54, ¶ 10, 261 A.3d 920 (quoting *Colford v. Chubb Life Ins. Co. of Am.*, 687 A.2d 609, 614 (Me. 1996)).

The main thrust of Williams-White's argument as to the ambiguity of the Interinsurance Policy is that the word "you" in the underinsured motorist exclusions does not necessarily only have the variety of defined meanings established in the definitions section, but rather might alternately have a more limited colloquial meaning. (Pl.'s Mot. Summ. J. 14-16.) Williams-White argues that although "you" is defined in the Interinsurance Policy, because in the definitions it is written that "[c]ertain words and phrases have a defined meaning when printed in *bold italic type*", the fact that "you" is not bolded in the underinsured motorist exclusion section means that it could be interpreted as not having its defined meaning. (Pl.'s Mot. Summ. J. 14-16, Ex. A, at 14.)

Williams-White's argument does not persuade the Court, however, and the very language of the Interinsurance Policy plainly rejects Williams-White's reading. The language concerning bold and italic type is in a different section of the definitions from the definition given for "you". (Joint S.M.F. Ex. A, at 14-15.) Additionally, unlike in the section containing the bold and italic type language, where every term defined is bolded and italicized when defined, in the section where "you" is defined, the word "you" is neither bolded nor italicized, and simply within quotation marks. (Joint S.M.F. Ex. A, at 14-15.) Nothing about this suggests that a word or phrase needs to be bolded and italicized for it to have the meaning accorded to it by the definitions.

8

Furthermore, the very language Williams-White relies on does not imply what she wishes it would. "Certain words and phrases have a defined meaning when printed in *bold italic type*" does not mean that *all* words and phrases have a defined meaning when printed in bold italic type, rather only that *certain* words and phrases do. (Joint S.M.F. Ex. A, at 14.) Indeed, the language of the Interinsurance Policy quite clearly establishes that "you" is a defined term for the whole of the Interinsurance Policy regardless of formatting, as it states: "Throughout this policy: . . . 3. "You" or "your" - mean any named insured on the declarations page. If there is only one named insured on the declarations page and that insured is a *person*, "you" or "your" includes the *resident* spouse of that *person*." (Joint S.M.F. Ex. A, at 14-15.)

Although the Court reads the language of the Interinsurance Policy "from the perspective of an average person untrained in either the law or the insurance field," this reading is still a "more than casual reading of the policy." *Kelly*, 2017 ME 166, ¶ 5, 168 A.3d 779. In doing so, the Court cannot simply disregard a defined term. The definitions of the Interinsurance Policy do not require that the term "you" be bolded or italicized, and "[w]hen a term is expressly defined within the four corners of an insurance policy, an inquiring court must defer to that definition and thereby give effect to the intent of the parties." *Medical Mut. Ins. Co*, 583 F.3d at 60. Resultantly, when the word "you" is used in the exclusions, it is not used ambiguously, but has only one possible meaning: it is used with all of the meanings in the definitions of the Interinsurance Policy.

> 2. When "You" Has its Defined Meaning, the Exclusions Plainly Bar Williams-White from Recovering Under the Interinsurance Policy

Having resolved that "you" is unambiguous in the Interinsurance Policy, the Court now turns to the exclusion language of the Interinsurance Policy. The exclusions section provides:

COVERAGE E does not apply to *bodily injury* sustained:

9

1. By you, while *occupying* or when struck by any *motor vehicle* you own which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

(Joint S.M.F. Ex. A, at 23.) This section, the "other-owned vehicle" exclusion, excludes certain other vehicles not covered by the policy. As the definitions provide, "you" means both the insured, namely, Williams-White, and the insured's resident spouse, namely, Calvin White. Thus, when the definition for "you" established in the Interinsurance Policy is inserted, this section of provides that coverage is excluded for any injury sustained:

1. By [Williams-White or Calvin White], while *occupying* or when struck by any *motor vehicle* [Williams-White or Calvin White] own[s] which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

(Joint S.M.F. Ex. A, at 23.)

When the Interinsurance Policy is read this way, as it must be, it is clear that the injuries suffered by Williams-White in the Crash are excluded from coverage. Williams-White was occupying Calvin's motorcycle, which was not insured under the Interinsurance Policy, when the Crash occurred and Williams-White was injured. This is the very kind of situation that the exclusion was written to exclude from coverage under the Interinsurance Policy. Accordingly, the Court finds that, under the language of the Interinsurance Policy, Williams-White is barred from making any recovery for injuries sustained in the Crash.

**B. The Exclusion Barring Williams-White's Claim Under the Interinsurance Policy Does Not Violate Maine Insurance Statutes and Precedent.**

Williams-White alternately argues that if the "other-owned vehicle" exclusion precludes recovery, then the exclusion is not valid under Maine law because it violates the Maine insurance statutes. Williams-White argues that the "other-owned vehicle" exclusion violates Maine insurance law by preventing her from having any possibility to recover in an uninsured or

10

underinsured motorist scenario. However, this exclusion is valid under Maine law. There is precedent considering nearly identical exclusions, and the Law Court has repeatedly and recently found such exclusions to be valid and enforceable.

The Law Court has repeatedly considered cases where parties have asserted that "other-owned vehicle" exclusions violate Maine insurance statutes, specifically 24-A M.R.S. § 2902, or contravene public policy. *See* 24-A M.R.S. § 2902 (2022); *Estate of Galipeau v. State Farm Mut. Auto. Ins. Co.*, 2016 ME 28, ¶¶ 9-15, 132 A.3d 1190, *Estate of Lewis v. Concord Gen. Mut. Ins. Co.*, 2014 ME 34, ¶ 12, n. 9, 87 A.3d 732; *Hall*, 2007 ME 104, ¶¶ 11-12, 942 A.2d 663; *Cash v. Green Mountain Ins. Co.*, 644 A.2d 456, 457-58 (Me. 1994); *Bear v. U.S. Fid. & Guar. Co.*, 519 A.2d 180, 182 (Me. 1986); *Gross v. Green Mountain Ins. Co.*, 506 A.2d 1139, 1142 (Me. 1986); *Hare v. Lumbermens Mut. Cas. Co.*, 471 A.2d 1041, 1043 (Me. 1984); *see also Maurice v. State Farm Mut. Auto. Ins. Co.*, 235 F.3d 7, 9-10 (1st Cir. 2000) (applying Maine law in a case concerning an "other-owned vehicle" exclusion question). Despite strictly construing exclusions in insurance policies against the insurer, the Law Court has repeatedly found that "other-owned vehicle" exclusions do not violate Maine insurance statutes or public policy.[2] *See, e.g., Hall*, 2007 ME 104, ¶ 11, 942 A.2d 663 (summarizing a series of decisions on "other-owned vehicle" exclusions).

As recently as 2016, the Law Court considered an appeal that "invite[d the Law Court] to depart from [its] clear and long-standing precedent" on "other-owned vehicle" exclusions. *Estate of Galipeau*, 2016 ME 28, ¶ 12, 132 A.3d 1190. Noting that Maine law had been unchanged on this point for "some thirty years", the Law Court considered the appellant's argument that there

---

[2] Under Maine law, "exclusions and exceptions in insurance policies are disfavored," and a Court construes them strictly against the insurer. *Patrons Oxford Ins. Co. v. Harris*, 2006 ME 72, ¶ 7, 905 A.2d 819.

was a "growing national trend" of finding "other-owned vehicle" exclusions invalid. *See id.* The Law Court also discussed a treatise which recognizes that many states' courts only permit similar exclusions if they "are specifically authorized by the state's uninsured motorist legislation." *Id.* ¶ 13 (citing 1 ALAN I. WIDISS & JEFFREY E. THOMAS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 4.19(C) (3d ed. 2005)). Nevertheless, the *Galipeau* Court declined the appellant's invitation to reverse longstanding Maine precedent, finding no compelling reason for a change in established law and holding that there was, in fact, a valid policy basis for allowing "other-owned vehicle" exclusions, as they allow vehicle owners and insurers the ability to contract specifically for how much coverage they want to carry or provide on a vehicle. *Estate of Galipeau*, 2016 ME 28, ¶¶ 14-15, 132 A.3d 1190 (holding that the principle of *stare decisis* guides the Law Court not to depart from established law unless a compelling reason for such a departure exists).

As Interinsurance correctly identifies in its Cross-Motion, the Interinsurance Policy is quite like many of the policies that the Law Court has considered when addressing this issue. (Def.'s Cross Mot. Summ. J. 11-13.) For example, in *Hall*, the Law Court considered a policy which excluded coverage for "'bodily injury' sustained: 1. By an 'insured' while 'occupying', or when struck by, any motor vehicle owned by that 'insured' which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle." *Hall*, 2007 ME 104, ¶ 14, 942 A.2d 663. Just like in the Interinsurance Policy, the definition for the owner of the non-covered vehicle includes a resident spouse, as in *Hall* the term "'insured' includes '[y]ou or any 'family member." The term 'you' in the policy includes both: 1. The 'named insured 'shown in the Declarations; and 2. The spouse if a resident of the same household." *Id.* The language of the policy in *Hall* and the language of the Interinsurance Policy are nearly identical in both structure

12

and meaning. The Law Court found that the exclusion in *Hall* unambiguously applied and was not in violation of Maine insurance law. *Id.* ¶¶ 11, 15.

In light of the Interinsurance Policy's similarity to other policies considered by the Law Court, and the Law Court's firmly established and longstanding stance on "other-owned vehicle" exclusions, the Court does not find that the Interinsurance Policy violates Maine insurance statutes or public policy. As a result, the Court finds that Williams-White is barred from any recovery under the Interinsurance Policy for her injuries sustained in the Crash.

## V. CONCLUSION

Reviewing the evidence in the light most favorable to Williams-White, the Court finds that the language of the Interinsurance Policy is unambiguous, and that, as it is written, Williams-White is not entitled to recovery for injuries suffered in the Crash. Furthermore, the Court does not find that the exclusions which bar Williams-White's recovery under the Interinsurance Policy are contrary to Maine insurance statutes and established Maine precedent. For these reasons, the Court denies Williams-White's Partial Motion for Summary Judgment, and grants Interinsurance's Cross-Motion for Summary Judgment.

**Entry is:**

Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Cross-Motion for Summary Judgment is **GRANTED**.

The clerk is directed to incorporate this order into the docket, by reference, pursuant to M.R. Civ. P. 79(a).

**12/01/2022**
_____
Date

_____
Ann M. Murray, Justice
Maine Superior Court

ORDER/JUDGMENT ENTERED IN THE
COURT DOCKET ON: 12-11-2022          13