2006 ME 72

**PATRONS OXFORD INSURANCE COMPANY**

v.

**Preston A. HARRIS et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 20, 2005.

Decided: June 16, 2006.

James D. Poliquin, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for plaintiff.

Benjamin R. Gideon, Esq. (orally), Berman & Simmons, P.A., Lewiston, Preston Harris did not file a brief, for party-in-interest Darrell Luce.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

SILVER, J.

[¶ 1] Patrons Oxford Insurance Company appeals from a judgment entered in the Superior Court (Penobscot County, *Mead, J.*) declaring that (1) Preston A. Harris is an insured under an automobile policy issued by Patrons to David Ferguson; (2) Patrons is bound by a settlement agreement entered into between Harris and Darrell Luce Jr.; and (3) Luce could reach and apply against Patrons a judgment for damages entered against Harris. 24-A M.R.S. § 2904 (2005). Finding no error, we affirm the judgment and remand to the Superior Court for a determination of the reasonableness of the settlement and the damages awarded to Luce, and the alleged existence of collusion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[¶ 2] Darrell Luce Jr. was struck and injured in May of 2001, by a truck owned and insured by David Ferguson and driven by Preston Harris. The accident occurred shortly after Harris and Kurt Ferguson, David Ferguson's son, arrived at a party near Kurt's home. Upon arriving at the party, Harris and Kurt were confronted by a hostile crowd of people that demanded they depart or else they would be physically harmed. Harris and Kurt quickly reentered the truck, with the crowd physically ushering Harris into the driver's seat and Kurt into the passenger's seat. Without discussing with Kurt whether he should drive the truck, Harris, admittedly "in a panic," started the truck to get himself and Kurt from the potentially violent crowd.[1] During the hasty departure, the truck hit Luce, pinning him against another vehicle, injuring his legs.

[¶ 3] At the time of the accident, David Ferguson had insured the truck through Patrons. Shortly after the accident, Patrons undertook an investigation to determine whether the accident was covered by the Ferguson policy with Patrons. In response to its investigation, particularly an interview Harris gave to Patrons's investigator, counsel for Patrons sent letters to Harris indicating that there was a question about whether Harris had permission to operate the truck, and it was therefore reserving its right to deny him coverage under the Ferguson policy. Patrons's de-

1. The court found that Harris admitted to being intoxicated when he drove the truck. Further, it found that Harris did not possess a valid driver's license when he operated David Ferguson's truck. During the hearing in Patrons's declaratory judgment action, Harris testified that he simply failed to renew his license when it expired, that it had never been suspended or revoked. Finally, the court found that Harris never told Kurt that he did not possess a valid driver's license.

cision was premised on a policy exclusion, which states, in relevant part: "We do not provide Liability Coverage for any 'insured' ... [u]sing a vehicle without a reasonable belief that that 'insured' is entitled to do so."

[¶ 4] More than a year after the accident, Luce filed a complaint against Harris in the Superior Court. *Luce v. Harris*, CV–2002–149. After it learned of the suit, Patrons sent a letter to Harris, informing him that it was providing him with counsel, but that this representation was subject to a reservation of rights, with Patrons "reserving the right to withdraw from [Harris's] defense at any time if appropriate under the circumstances." Subsequently, Patrons filed a motion to intervene in *Luce v. Harris*.[2] Patrons, with its motion to intervene pending, also filed this declaratory judgment complaint in the Superior Court, requesting that the court declare that Harris was not covered by the Ferguson policy based on the "reasonable belief" exclusion.

[¶ 5] More than a month after Patrons filed its motion to intervene, Luce and Harris filed a stipulation for entry of judgment against Harris in *Luce v. Harris*. In exchange for Harris's stipulation, Luce agreed not to collect a judgment from Harris personally; he would attempt to collect such a judgment only from Patrons through Maine's reach and apply statute, 24–A M.R.S. § 2904,[3] if coverage was later found. The parties also agreed that the Superior Court would determine Luce's damages. Judgment on the stipulation and damages was subsequently entered in the Superior Court (*Mead, J.*), with the court awarding Luce $32,704.68.[4]

[¶ 6] Prior to the damages hearing and the court's damages determination, the court denied Patrons's motion to intervene in *Luce v. Harris*. Following the court's decision, Luce filed an answer to Patrons's declaratory judgment complaint and later added a counterclaim pursuant to section 2904. Following a bench trial on the declaratory judgment complaint and Luce's counterclaim, the court concluded that Harris was an insured under the Ferguson policy because the emergency situation and the threat of bodily harm made it reasonable for Harris to believe that he was entitled to operate the vehicle to escape the potentially violent situation, despite being intoxicated and not possessing

2. In its motion to intervene, Patrons noted that it was defending Harris under a reservation of rights, and that it had recently learned that Luce proposed a settlement to Harris whereby Harris agreed to stipulate to liability and not contest a hearing on Luce's damages. In the alternative to its request to intervene, Patrons requested that the court stay *Luce v. Harris* to allow resolution of the coverage issue posed in its declaratory judgment complaint.

3. Maine's reach and apply statute, in relevant part, provides:

> Whenever any person, administrator, executor, guardian, recovers a final judgment against any other person for any loss or damage specified in section 2903, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a civil action, in his own name, against the insurer to reach and apply the insurance money, if when the right of action accrued, the judgment debtor was insured against such liability and if before the recovery of the judgment the insurer had had notice of such accident, injury or damage. The insurer shall have the right to invoke the defenses described in this section in the proceedings.

24–A M.R.S. § 2904 (2005). An insurer may invoke "fraud or collusion between the judgment creditor and the insured" as a defense in a reach and apply action. 24–A M.R.S. § 2904(6).

4. Although the court determined damages, the record reveals that Harris's counsel notified the court in advance of his intention not to attend the hearing on damages.

a valid driver's license. The court also found that the Luce–Harris settlement agreement did not violate any law or insurance policy provision. As to Luce's counterclaim, the court found that Patrons had notice of the proceedings and Harris was an insured under the Ferguson policy. The court held that of the statutory defenses available to Patrons, fraud was inapplicable because Patrons was informed of the agreement at all times, and Harris's mere failure to cooperate with Patrons was not dispositive on the issue of collusion. The court therefore found that Luce could satisfy the damages judgment with money from the Ferguson policy.

## II. DISCUSSION

### A. Standard of Review

[¶ 7] The meaning of language contained in an insurance contract is a question of law that we review de novo. *Foremost Ins. Co. v. Levesque,* 2005 ME 34, ¶ 7, 868 A.2d 244, 246. "Exclusions and exceptions in insurance policies are disfavored, and are construed strictly against the insurer." *Id.* (citations omitted). We review a trial court's factual findings for clear error, *Fitch v. Doe,* 2005 ME 39, ¶ 17, 869 A.2d 722, 727, "and will uphold the findings unless there is no evidence to support them," *Hartwell v. Stanley,* 2002 ME 29, ¶ 10, 790 A.2d 607, 611 (quotation marks omitted).

### B. Harris's Coverage under the Ferguson Policy

[¶ 8] David Ferguson's automobile policy issued by Patrons provides that the insurer will "pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." The policy defines an "insured" as "[a]ny person using 'your covered auto,' " but excludes coverage for an "insured" "[u]sing a vehicle without a reasonable belief that that 'insured' is entitled to do so."

[¶ 9] We have previously examined the "reasonable belief" exclusion and found that it is composed of the following elements: "A person lacks a reasonable belief that he or she is entitled to use a vehicle if that person: (i) knows that he or she is not entitled to use the vehicle; or (ii) lacks objectively reasonable grounds for believing that he or she is entitled to use the vehicle." *Craig v. Barnes,* 1998 ME 110, ¶ 7, 710 A.2d 258, 260. In assessing whether a person possessed an objectively reasonable belief that he or she was entitled to use a vehicle, we recognized that a "court must consider *any fact* relevant to the objective reasonableness of that person's belief," including ownership of the vehicle, permission to use the vehicle, relationship to the insured, prior use of the vehicle, and legal entitlement to drive. *Id.* ¶ 8, 710 A.2d at 260 (emphasis added). This list of relevant factors is, however, not exhaustive.

[¶ 10] The court found that Harris had an objectively reasonable belief that he was entitled to use the truck. The court found that immediately upon arriving at the party, a confrontation ensued whereby Harris and Kurt Ferguson were ordered by an angry crowd to leave the party or else suffer bodily injury. The court found that Harris and Kurt quickly reentered the truck and Harris was in the driver's seat. The court found that given the exigency of the situation, there was no time for "extended colloquy" between Harris and Kurt regarding who should drive—both men understood that they needed to quickly leave the party. Based on the exigency, the court concluded that Harris operated the truck with Kurt's permission, despite the existence of factors, such as both men being intoxicated and Harris not possessing a valid driver's license—that

absent the exigency may ordinarily undercut such a belief. The court's finding was not clearly erroneous.

[¶ 11] Patrons argues that Harris could not reasonably believe that he was given permission because he did not inform Kurt that he did not hold a valid driver's license. Patrons's argument, however, ignores the circumstances under which Harris actually operated the vehicle.[5] In the heat of the moment, there was no time for Harris and Kurt to converse about whether Harris should or should not drive because he was unlicensed. Harris was in the driver's seat, had the keys on his person, and knew that he and Kurt had to quickly leave the party. Harris's failure to apprise Kurt that he failed to renew his license is not dispositive, given the alternative. Accordingly, the court did not err in finding that Harris was an "insured" under the automobile policy issued by Patrons.

C. Patrons's Opportunity to be Heard

[¶ 12] Patrons next argues that it should not be liable for Luce's damages award pursuant to 24–A M.R.S. § 2904 because it did not have a meaningful opportunity to litigate either Harris's liability or Luce's damages, resulting in an impermissible denial of due process. Luce argues that the judgment is binding on Patrons through section 2904 because Patrons had the opportunity to be heard but lost that opportunity by defending Harris under a reservation of rights, and because the terms of section 2904 have otherwise been met.

[¶ 13] We have not previously addressed the tensions that exist between an insurer that reserves the right to deny coverage under the policy and the impact of that decision on the insured. We take this opportunity to do so. We have long recognized that "[t]he essence of due process is notice and an opportunity to be heard." *Michaud v. Mut. Fire, Marine & Inland Ins. Co.*, 505 A.2d 786, 789 (Me. 1986) (citing *Mutton Hill Estates v. Town of Oakland*, 468 A.2d 989, 992 (Me.1983)). In the context of section 2904, due process requires that an insurer be given notice of a claim such that it has a "meaningful opportunity to defend its interests." *Jacques v. Am. Home Assurance Co.*, 609 A.2d 719, 721 (Me.1992).

[¶ 14] Patrons does not argue that it did not receive notice of the underlying suit. Patrons does, however, argue that it did not have a meaningful opportunity to defend its interests because Harris settled the case without its permission. We disagree with Patrons's position, however, because Patrons did have the opportunity to litigate Harris's liability under the Ferguson policy in the underlying suit between Luce and Harris, but it lost that opportunity when it elected to defend Harris under a reservation of rights.

[¶ 15] We start from the premise that an insurer does not breach the insurance agreement by electing to defend its insured under a reservation of rights. *See Gates Formed Fibre Prods., Inc. v. Imperial Cas. & Indem. Co.*, 702 F.Supp. 343, 346 (D.Me.1988). Furthermore, we agree with those courts that have held that "an insurer who reserves the right to deny coverage cannot control the defense of a lawsuit brought against its insured by an injured party." *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638–39 (1st Cir. 1989); *see also Cay Divers, Inc. v. Raven*,

5. We only examine here Harris's reasonable belief that he was entitled to operate the truck under the unusual circumstances present here. We express no opinion whether Harris would have had a reasonable belief that he was entitled to operate the vehicle on the way to the party or, for that matter, away from the party absent the exigency.

812 F.2d 866, 870 (3d. Cir.1987); *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 741 P.2d 246, 252 (1987) (stating that "[t]he insurer's reservation of the privilege to deny the duty to pay relinquishes to the insured control of the litigation"); *Ins. Co. of N. Am. v. Spangler*, 881 F.Supp. 539, 543–44 (D.Wyo.1995); 22 ERIC MILLS HOLMES, HOLMES' APPLEMAN ON INSURANCE 2d § 136.7, at 49 (2003) (stating that, "if the insurer has reserved its right to deny coverage, the insurer cannot compel the insured to surrender control of the litigation"). This position strikes a fair balance between the insurer and the insured. If the insurer could continue to control the insured's defense despite reserving its rights to later deny coverage, it could assert a liability defense and insist on fully litigating the insured's case, thus exposing the insured to personal liability if there is a verdict favorable to the claimant. If the verdict is favorable to the claimant, the insurer still has another opportunity to avoid liability by doing exactly as Patrons did here, litigating coverage in a declaratory judgment action. Thus, we agree with the Arizona Supreme Court that the insured "risk[s] financial catastrophe if [he is] held liable, while the insurer may save itself by litigating both issues—the insured's liability and the coverage defense—and winning either." *Morris*, 741 P.2d at 251.

[¶ 16] By allowing the insured to control his own case when the insurer issues a reservation of rights, the insured can protect himself "from the sharp thrust of personal liability," *id.* (quotation marks omitted), and the insurer still has a meaningful opportunity to protect its own interests in a declaratory judgment action where it may assert, among other things, a coverage defense. Because Patrons chose to defend Harris under a reservation of rights, it gave up the ability to control Harris's defense. Therefore, Patrons cannot now assert that it was denied the opportunity in the personal injury action to litigate Harris's liability to Luce because it was an opportunity Patrons possessed and relinquished when it proceeded under the reservation of rights. *See Miller v. Shugart*, 316 N.W.2d 729, 733–34 (Minn.1982) (concluding that an insurer who disputes coverage cannot "compel the insureds to forego a settlement which is in their best interests").

[¶ 17] Although Patrons may have lost the opportunity to control the tort litigation when it decided to proceed under the reservation of rights, it was not left without the ability to contest its liability under the policy. Patrons had, and in fact availed itself of, the opportunity to litigate coverage by undertaking this declaratory judgment action at an appropriate point relative to *Luce v. Harris*. *See Patrons Oxford Mut. Ins. Co. v. Garcia*, 1998 ME 38, ¶ 6, 707 A.2d 384, 385 ("Except in limited circumstances, an insurer cannot avoid its duty to defend by establishing, before the underlying action has concluded, that ultimately there will be no duty to indemnify.") (quotation marks omitted). Therefore, we find that Patrons was not denied a meaningful opportunity to contest liability under the insurance policy. *See Michaud*, 505 A.2d at 790.

[¶ 18] Patrons further asserts that it should not be bound by the terms of the Luce–Harris settlement agreement and subsequent judgment simply because it chose to proceed under a reservation of rights. In other words, Patrons argues that principles of collateral estoppel and res judicata prevent it from being bound by a judgment to which it was not a party. Other courts have held, in a similar context, that an insurer is bound by a reasonable settlement entered into by its insured being defended under a reservation of

rights. *See Morris,* 741 P.2d at 253–54. The Arizona Supreme Court, after holding that such a settlement did not violate the insurance policy, turned to the issue of whether the insurer could " 'relitigate' any aspect of the original tort claim." *Id.* at 253. In the face of the insurer's argument that it possessed "an absolute right to relitigate all aspects of the liability case, including liability and the amount of damages," the court rejected this position as an end-run on the permissibility of the agreement. *Id.* The court noted, however: "an insured being defended under a reservation might settle for an inflated amount or capitulate to a frivolous case merely to escape exposure or further annoyance." *Id.* To balance the competing interests, the court held that "neither the fact nor amount of liability to the claimant is binding on the insurer unless the insured or claimant can show that the settlement was reasonable and prudent." *Id.* (citing *Miller,* 316 N.W.2d at 735). The court determined that the proper test for examining whether a settlement is reasonable and prudent "is what a reasonably prudent person in the insureds' position would have settled for on the *merits* of the claimant's case," taking into account the possibility of the insured's liability, risk of an adverse verdict, and the damages portion of the claimant's case. *Id.* at 254; *see also Cambridge Mut. Fire Ins. Co. v. Perry,* ¶ 11, 197 Me. 94, 692 A.2d 1388, 1391. We agree with this approach.

[¶ 19] Making settlements such as this one binding on the insurer prevents the insurer from circumventing such settlements when it has already ceded control of the litigation to its insured. We conclude, however, that the insurer should not be liable for an unchallenged amount judicially determined after an uncontested hearing on damages, or an amount not judicially determined to which its insured agrees because the insured could agree to settle for an inflated amount in exchange for a release from liability. Thus, the damages arising from a settlement such as the one seen here is binding on the insurer only to the extent that the insured or the claimant can show that it is reasonable, and only after coverage is deemed to exist.[6] Because we herein affirm the declaratory judgment court's finding that coverage exists, and because Luce has not yet shown the reasonableness of the settlement and the damages awarded, we remand to the Superior Court for Luce to make this showing. In addition to assessing the reasonableness of damages, the court, on remand, must determine whether the settlement entered into by Harris was reasonable, taking into account Harris's potential liability, the amount of damages, and his potential personal risk in the face of an adverse verdict.[7]

6. The binding nature of the settlement is a secondary question to the existence of coverage. Although the burden is on the insured or the claimant to establish the reasonableness of the settlement, the burden remains on the insurer to establish, after coverage is shown, that the conduct at issue is subject to a policy exclusion. *See Mut. Fire Ins. Co. v. Hancock,* 634 A.2d 1312, 1312–13 (Me.1993); Brett D. Baber, *Ten Rounds with the Insurance Company,* 16 Me. Bar J. 148, 153 (2001).

7. Patrons argues that the inclusion of a covenant not to execute ipso facto renders the Luce–Harris settlement unreasonable. Although, given the fact that we are remanding for a determination of reasonableness, we need not fully address this argument, we do pause to note that settlements including non-execution provisions have routinely been upheld. *See, e.g., Midwestern Indem. Co. v. Laikin,* 119 F.Supp.2d 831, 841 (S.D.Ind.2000) (stating that many courts have held "that when an insured and tort claimant enter into an agreed judgment and a covenant not to execute the judgment against the insured, the judgment can be enforced against the insurer if coverage is shown"); *see also* Steven Plitt, *The Evolving Boundaries of* Damron/Morris

D. Application of the Reach and Apply Statute

[¶ 20] The court found the reach and apply statute, 24-A M.R.S. § 2904, to be applicable here because Patrons had notice and Harris, as it found, was an insured under the Ferguson automobile policy. The court further found that of the enumerated defenses applicable to such an action, fraud and collusion, fraud was inapplicable because Harris kept Patrons advised of the agreement,[8] and Harris's mere lack of cooperation with Patrons was not dispositive on the issue of collusion.

[¶ 21] Patrons nonetheless argues that the Luce-Harris settlement was the product of collusion because Luce and Harris worked together to orchestrate a scheme whereby Luce induced Harris to breach the insurance policy. *See* 24-A M.R.S. § 2904(6). The only defenses to a reach and apply action are those contained in section 2904. *See Michaud,* 505 A.2d at 788-89. The mere lack of cooperation by the insured is not dispositive on the issue of fraud or collusion. *Id.* at 788 n. 1. Additionally, where the insured is being defended under a reservation of rights, the insured, who, as we have noted, is in control of his defense, may need to be in contact with the claimant, and may negotiate with the claimant and enter into a settlement that protects his interests. Although the insurer may be opposed to the insured entering into the settlement, such conduct on the part of the insured does not necessarily rise to the level of collusion. *See* BLACK'S LAW DICTIONARY 259 (7th ed.1999) (defining collusion as "[a]n agreement to defraud another or to obtain something forbidden by law"); *see also Medico v. Employers Liab. Assurance Corp.,* 132 Me. 422, 427, 172 A. 1, 4 (1934) (noting that the defense of collusion may be found where the insured and the claimant "attempt[ ] to defraud the [insurance] company by refusing to testify to the real facts of the accident or testify[ ] falsely concerning them"). Here, Harris was entitled to settle with Luce when Patrons tendered its defense under a reservation of rights. Thus, Harris was entitled to negotiate with Luce and enter into a reasonable, nonfraudulent settlement with him. The court, after a hearing on the declaratory judgment, found no fraud, and we find no error in that conclusion. The issue of collusion, however, has not been finally determined by the court, and must be considered on remand.

## III. CONCLUSION

[¶ 22] In conclusion, an insured being defended under a reservation of rights is entitled to enter into a reasonable, noncollusive, nonfraudulent settlement with a claimant, after notice to, but without the consent of, the insurer. The insurer is not bound by any factual stipulations entered as part of the underlying settlement, and is free to litigate the facts of coverage in a declaratory judgment action brought after the settlement is entered. If the insurer prevails on the coverage issue, it is not liable on the settlement. If the insurer does not prevail as to coverage, it may be bound by the settlement, provided the settlement, including the amount of damages, is shown to be fair and reasonable, and free from fraud and collusion. The issues of the fairness and reasonableness of the settle-

*Agreements: A Search for the Missing Link, A Judicial Determination of the Length of a Reasonable Person's Arm, and Other Progressive Issues,* 35 ARIZ. ST. L.J. 1331, 1341-42 (2003).

8. Patrons does not challenge the court's finding as to fraud.

ment, as well as whether it is the product of fraud and collusion, may be brought by the insurer in the same action in which it asserts its coverage defense. If the claimant cannot show that the settlement and the damages or the settlement amount are reasonable, the claimant may recover only that portion which he proves to be reasonable. If the claimant cannot prove reasonableness, the insurer is not bound. Likewise, if the settlement is found to be the product of fraud or collusion, the insurer is not bound.

[¶ 23] Because Patrons has not had an opportunity to be heard on the reasonableness of the settlement and consequent damages,[9] Luce must establish these on remand. Patrons is only bound to the extent, if at all, that Luce establishes the settlement and damages to be reasonable. Further, because coverage and fraud have already been fully litigated here, the reasonableness of the settlement, the alleged existence of collusion, and the reasonableness of the damages award are the only issues remaining for the court on remand.

The entry is:

Judgment affirmed. This matter is remanded to the Superior Court for a determination of the reasonableness of the settlement, the alleged existence of collusion, and the reasonableness of Luce's damages award.

9. Damages were, in fact, judicially determined, but were determined in the personal injury action, where Patrons did not have an opportunity to be heard.