STATE OF MAINE                          BUSINESS AND CONSUMER COURT
CUMBERLAND, ss                          Location: Portland
                                        Docket No.: BCD-CV-12-13
                                        TEH-CUM-10/11/2012

                                    )
KOHL'S DEPARTMENT STORES,           )
INC.,                               )
                                    )
                Plaintiff,          )        ORDER ON KOHL'S MOTION TO
                                    )        COMPEL PRODUCTION OF
        v.                          )        DOCUMENTS AND LIBERTY'S
                                    )        MOTION TO QUASH
LIBERTY MUTUAL INSURANCE CO.,       )
                                    )
                Defendant           )
                                    )

        In this reach and apply action, *see* 24-A M.R.S. § 2904 (2011), Kohl's Department Stores

Inc. (Kohl's) moves to compel production of two sets of documents from Liberty Mutual

Insurance Company (Liberty): 1) documents prepared by the attorney of Liberty's insured, W/S

Alfred Road Properties LLC (Alfred Road), in *Kohl's Department Stores, Inc. v. W.S. Alfred

Road Properties LLC*, CUMSC-CV-08-391, which is the litigation underlying this reach and

apply action; and 2) internal documents of Liberty, i.e., the insurance adjuster's claims file.

Liberty objects that both sets of documents are protected by work-product privilege and the

attorney-client privilege. Relatedly, Liberty moves to quash a subpoena served by Kohl's on

Alfred Road's counsel requesting documents related to the underling litigation.

                    FACTUAL AND PROCEDURAL BACKGROUND

I.      Underlying Litigation

        Kohl's filed suit against Alfred Road and another party on July 3, 2008, asserting breach

of contract (Count I), breach of duty of good faith and fair dealing (Count II), negligent

misrepresentation (Count III), intentional misrepresentation (Count IV), and punitive damages

1

(Count V), because of deficient subsoil conditions on a commercial site developed by Alfred Road, upon which a Kohl's department store was situated. (Compl. ¶¶ 6-13.) Liberty defended Alfred Road, subject to a reservation of rights, and hired David L. Herzer, Jr., of Norman, Hanson & DeTroy, LLC, to defend Alfred Road. (Compl. ¶ 17; Compl. Exhs. A, B.) In addition, Alfred Road had separate, personal counsel, Christian Habersaat of Goulston Storrs in Boston, (Exh. B. at 1), as did Liberty during the litigation (Def.'s Opp'n M. Compel 3).

Kohl's asserted damages in excess of $12,800,000, which exceeded Alfred Road's policy limits of $10,800,000. (Compl. ¶¶ 15, 19-20.) Liberty was aware of the amount of damages sought by Kohl's. (Compl. ¶¶ 20, 24.) On July 8, 2011, Alfred Road put Liberty on notice that if Liberty did not provide reasonably sufficient monies under the policy toward settlement, Alfred Road would explore settlement on Count III of the complaint. (Compl. ¶ 25; Answer ¶ 25; see Pl.'s M. Compel 6 n.5; Def.'s Opp'n M. Compel 5, 8 n.2.) As a result of court-mandated mediation on July 11 and 12, 2011, at which a representative of Liberty was present, Kohl's and Alfred Road entered into a settlement agreement for a consent judgment to be entered on Count III in the amount of $10,800,000. (Compl. ¶¶ 26-27, 29.) The consent judgment was entered by the court on October 21, 2011. (Compl. ¶ 30; Compl. Exh. B.)

II.    Reach and Apply Action

Kohl's filed this reach and apply action against Liberty on December 5, 2011, in Cumberland County Superior Court, seeking to apply the coverage amounts of the policy to the settlement with Alfred Road. (Compl. ¶¶ 33-41.) Liberty answered on February 6, 2012, asserting, in relevant part, the affirmative defense of collusion. (Answer at 9.)

In the course of discovery, Kohl's requested the following documents, which are the subject of its motion to compel:

2

1. Liberty's complete file in *Kohl's Department Stores, Inc. v. W/S Alfred Road Properties Limited Liability Company, et al.*, CV-2008-391 (hereinafter "the Underlying Litigation"). This includes but is not limited to all correspondence in either print or electronic form between Liberty Mutual and its insured and attorneys representing Liberty Mutual's insured.

2. All documents generated or created by Alfred Road or its attorneys relating to the Litigation. This request includes but is not limited to all valuations and/or assessments of Kohl's Department Stores, Inc.'s ([]hereinafter "Kohl's") claim in the Underlying Litigation.

. . . .

5. All documents relating to Liberty Mutual's assessment and/or determination of the value of Kohl's claim in the Underlying Litigation.

. . . .

12. The complete file of the adjuster assigned to the Underlying Litigation by Liberty Mutual including but not limited to all notes made in electronic form and kept on servers or computers of Liberty Mutual.

(M. Compel Exh. A, Pl.'s Doc. Request 4-5.) Liberty objected on various grounds to the

production of these documents. (M. Compel Exh. A, Def.'s Response to Doc. Request 1-4, 8.),

and Kohl's moved to compel production of them.

Seeking similar information as the motion to compel, Kohl's also subpoenaed numerous

documents from Alfred Road for inspection in Alfred Road's deposition:

1. All portions of Alfred Road's file in the Underlying Litigation that have been provided or will be provided to Liberty Mutual or Liberty Mutual's counsel in connection with the [present litigation]. This includes but is not limited to all correspondence in either print or electronic form between Liberty Mutual and its insured and attorneys representing Liberty Mutual's insured.

2. All documents generated or created by Alfred Road or its attorneys relating to the Underlying Litigation which have been provided or will be provided to Liberty Mutual or Liberty Mutual's attorneys. This request includes but is not limited to all valuations and/or assessments of Kohl's claim in the Underlying Litigation.

3. All documents generated or relating to work performed in the Underlying Litigation by Ron Carr and/or Gerry D'Huy or D'Huy Engineering, Inc., or any individual or company associated with Ron Carr and/or Gerry D'Huy or D'Huy Engineering, Inc.

3

4. All documents generated or relating to work performed by Gerald Marion and/or Marino Engineering Associates, Inc. in the Underlying Litigation.

5. All documents relating to Liberty Mutual's assessment and/or determination of the value of Kohl's claim in the Underlying Litigation.

6. All correspondence in either print or electronic form between W/S Alfred Road's attorneys and Liberty Mutual relating in any way to the mediation in the Underlying Litigation which took place on July 11 and July 12, 2011.

7. All documents relating to Liberty Mutual's settlement position for the mediation which took place in the Underlying Litigation on July 11 and July 12, 2011.

8. All documents related to coverage opinions in the Underlying Litigation.

9. All documents relating to Liberty Mutual's settlement position for the mediation in the Underlying Litigation which took place on April 27 and April 28, 2010.

10. All report or analyses in either print or electronic form by attorneys for W/S Alfred Road attorneys or representatives to Liberty Mutual relating to the Underlying Litigation.

(Def.'s M. Quash Exh. A.) Liberty objected to the subpoena requests and moved to quash them.

Attached to Liberty's motion to quash is a letter from Alfred Road's counsel, Attorney Habersaat, stating that Alfred Road "will not invoke a privilege as to those materials in its possession that its defense counsel provided to Liberty [or Liberty's representatives] during the course of defense counsel's representation" of Alfred Road in the Underlying Litigation. (Def.'s M. Quash Exh. C.)

## DISCUSSION

The key issues in both the motion to compel and the motion to quash are essentially the same. The parties dispute the scope of the attorney-client privilege and work product privilege when an insurer provides a defense to its insured, and the insured and insurer cooperate in

4

preparation of litigation. Central to the parties' arguments are the identities of the attorneys and the clients in "common interest" arrangements and the effect of one client's waiver of privilege.

There are some points not in issue, however. First, Liberty does not assert a privilege with respect to documents dated after July 8, 2011, when Alfred Road informed Liberty it intended to settle without Liberty's consent and cooperation. Liberty asserts that it will produce those documents that is has in its possession, if it has not done so already. Similarly, Kohl's withdraws the motion to compel documents in Liberty's claims file to the extent those documents are not included in the file of the insured's defense counsel up to the date of July 8, 2011. Second, Liberty has stipulated that the Kohl's store in question must be torn down and rebuilt in order to repair it. Finally, the parties agreed at oral argument upon certain discovery requests relevant to the scope of discovery on Liberty's collusion defense. The parties agreed that Kohl's will provide the documents that were in effect in July 2011 enumerated in items 1, 3, 6, and 7 of Liberty's revised request for production.[1]

I.    Attorney-Client Privilege

"The purpose of the attorney-client privilege is to encourage clients to make full disclosure to their attorneys and to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 18, 742 A.2d 933 (quotation marks and citation omitted).[2]

---

[1] The revised list is Exhibit A to the reply memo Liberty submitted on the scope of discovery related to the defense of collusion.

[2] The privilege is stated in M.R. Evid. 502:

> (b) General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between the client or

The "burden of establishing the existence of privilege is on [the] party objecting to [its] discovery." *Pierce v. Grove Mfg. Co.*, 576 A.2d 196, 199 (Me. 1990). Nevertheless, the privilege belongs to the client and "[o]nce it is waived, it cannot be later revived." Field & Murray, *Maine Evidence* § 502.5 at 220 (6th ed. 2007).

## A. Identification of the Correct Client

With respect to documents created by Alfred Road's counsel either in the possession of Alfred Road or Liberty, Kohl's argues that Alfred Road was the client and Liberty, as a non-client, cannot claim attorney client-privilege. Kohl's cites four separate opinions of the Maine Professional Ethics Commission in support of the proposition that when counsel paid for by the insurer represents an insured, the insured is the attorney's client, not the insurer. *See, e.g.*, Me. Prof. Ethics Comm'n, Op. No. 63 at 1-2 (Nov. 5, 1985) ("In our opinion, the attorney represents the insured, notwithstanding that he is hired and paid by the insurance company.") Acknowledging that the Law Court has not addressed this issue directly, Kohl's points to *Patrons Oxford Insurance Co. v. Harris*, 2006 ME 72, ¶¶ 16-21, 905 A.2d 819, in which the Law Court recognized the competing interests when an insurance carrier provides a defense to the insured under a reservation of rights.

---

the client's representative and the client's lawyer or the lawyer's representative, or (2) between the lawyer and the lawyer's representative, or (3) *by the client or the client's representative or the lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein*, or (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

(c) Who may claim the privilege. The privilege may be claimed by the client, the client's guardian or conservator, the personal representative of a deceased client, or the successor, trustee, or similar representative of a corporation, association or other organization, whether or not in existence. The person who was the lawyer or the lawyer's representative at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the client.

(Emphasis added.)

6

Liberty, on the other hand, points out that no Maine court has addressed the issue of whether the counsel hired by an insurance company represents only the insured, or the insured and the insurer in the underlying litigation, and asserts that the Professional Ethics Commission opinions are not binding. *Cf. Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 19 (1st Cir. 2012) (explaining that "Massachusetts law . . . considers an attorney retained by an insurer to represent the insured as the attorney for both" insured and insurer). Liberty argues that regardless of whether Liberty was a client or not, the "common interest" privilege protects those documents.

Although Liberty asserts that the Court need not reach the issue of whether an attorney hired by an insurer represents both an insured and the insurer, the court views the identity of the client and the common interest privilege as inescapably linked. "The common interest privilege is not an independent basis for privilege but an exception to the general rule that no attorney-client privilege attaches when confidential communications are communicated in the presence of or to third parties." 1 EDNA SELAN EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE, pt. 1, element 3, § H (LEXIS 5th ed. 2007) [hereinafter EPSTEIN, ATTORNEY-CLIENT PRIVILEGE]. Cases refer to this exception as the "common interest privilege," "common interest doctrine," "allied lawyer doctrine," and "joint defense privilege," sometimes interchangeably. Critics have suggested that the interchangeable use of the terms "common interest privilege" or "joint defense privilege" is imprecise, and there is a conceptual distinction between when parties with separate lawyers consult (the "allied lawyer doctrine"), and when two clients share the same lawyer (the "joint client doctrine"). *See Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 213 B.R. 433, 435 n.1 (Bankr. S.D.N.Y. 1997) (distinguishing between the various doctrines); 1 EPSTEIN, ATTORNEY-CLIENT PRIVILEGE, pt. 1, element 3, § H. *Compare* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76 (LEXIS 2000) (titled

7

"The Privilege in Common-Interest Arrangements"), *with* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 75 (LEXIS 2000) (titled "The Privilege of Co-Clients"). An attorney representing two co-clients is a far different situation than clients with a common interest that are separately represented. *See, e.g.*, M.R. Evid. 502(d)(5).

On the issue of which client Attorney Herzer represented, the court concludes that Alfred Road was Herzer's client, and not Liberty. The court bases this conclusion on the long-standing position of the Maine Professional Ethics Commission and the Law Court's language in *Patrons Oxford Insurance Co. v. Harris*.[3] Over the course of the last 25 years, the Commission has maintained the position that an "attorney represents the insured, notwithstanding that he is hired and paid by the insurance company." Me. Prof. Ethics Comm'n, Op. No. 63 at 1-2 (Nov. 5, 1985); *accord* Me. Prof. Ethics Comm'n, Op. No. 164 at 1 (Dec. 2, 1998); Me. Prof. Ethics Comm'n, Op. No. 122 at 1 (Mar. 5, 1992); Me. Prof. Ethics Comm'n, Op. No. 72 at 1 (Aug. 6, 1986). Further, the Law Court stated in *Patrons Oxford* that "an insurer who reserves the right to deny coverage cannot control the defense of a lawsuit brought against its insured by an injured party." 2006 ME 72, ¶ 15, 905 A.2d 819. Exclusive representation of the insured by the attorney hired by an insurer naturally flows from the concept that the insured must be able to control the litigation, particularly when as here, the insurer has elected to defend under a reservation of rights. In such a situation, the interests of the insured and the insurer are not identical because the insurer may still refuse to pay for damages awarded to a plaintiff or pay the amount of a settlement. *See United Servs. Auto. Ass'n v. Morris*, 741 P.2d 246, 250-51 (Ariz. 1987) (cited in *Patrons Oxford Ins. Co. v. Harris*, 2006 ME 72, ¶ 15, 905 A.2d 819). Because Liberty reserved the right to deny coverage, and absent an express arrangement to the contrary,

---

[3] The Law Court, in at least one instance, has relied upon the reasoning of Maine Professional Ethics Commission opinions. *See Bd. of Overseers of the Bar v. Warren*, 2011 ME 124, ¶ 26, 34 A.3d 1103.

8

the court concludes that Attorney Herzer represented Alfred Road exclusively, and did not represent Liberty. This conclusion is reinforced by the fact that Liberty had its own counsel during the course of the Underlying Litigation. The identity of Alfred Road as the client, however, is not the end of the inquiry.

B.    The Common Interest Doctrine

The common interest doctrine, as stated in the Restatement (Third) of the Law Governing Lawyers, is:

> If two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged . . . that relates to the matter is privileged as against third persons. Any such client may invoke the privilege, unless it has been waived by the client who made the communication.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76 (LEXIS 2000). "[T]he common interest privilege assumes the existence of a valid underlying privilege," such as the attorney-client privilege or the work-product privilege. *See* 1 EPSTEIN, ATTORNEY-CLIENT PRIVILEGE, pt. 1, element 3, § H. Relevant official comments to the Restatement section explain the scope of the privilege:

> *d. The permissible extent of common-interest disclosures.* Under the privilege, any member of a client set--a client, the client's agent for communication, the client's lawyer, and the lawyer's agent . . . can exchange communications with members of a similar client set.
>
> . . . .
>
> *e. Extent of common interests.* The communication must relate to the common interest, which may be either legal, factual, or strategic in character. The interests of the separately represented clients need not be entirely congruent.
>
> . . . .
>
> *g. Standing to assert the privilege; waiver.* Any member of a common-interest arrangement may invoke the privilege against third persons, even if the communication in question was not originally made by or addressed to the objecting member.

> In the absence of an agreement to the contrary, any member may waive the privilege with respect to that person's own communications. Correlatively, a member is not authorized to waive the privilege for another member's communication. If a document or other recording embodies communications from two or more members, a waiver is effective only if concurred in by all members whose communications are involved, unless an objecting member's communication can be redacted.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76 cmts. d, e, g.

The common interest privilege has been recognized by the Law Court in *Citizens Communications Co. v. Attorney General*: "the common interest component of the privilege prevents clients from waiving the attorney-client privilege when attorney-client communications are shared with a third person who has a common legal interest with respect to the communications, such as a co-defendant." 2007 ME 114, ¶ 16, 931 A.2d 503. The Law Court pointed to M.R. Evid 502(b)(3), which protects confidential communications "by the client or the client's representative or the lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of *common interest* therein." (Emphasis added). *But see Waste Mgmt, Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 194 (Ill. 1991) (applying the common interest doctrine "where the attorney, though neither retained by nor in direct communication with the insurer, acts for the mutual benefit of both the insured and the insurer"). This Court notes, however, that the language in *Citizens Communication* and in M.R. Evid. 502(b)(3) indicates the scope of the common interest only applies to *parties* in the same or another pending action. Liberty was not a party to the Underlying Litigation. Thus, although the Law Court and the rule clearly indicate the common interest doctrine applies to co-defendants or parties with a common interest in the same litigation, the Law Court has not addressed whether an insurer and insured have a common interest in litigation notwithstanding that the insurer is not a party to the litigation.

Nevertheless, the court concludes that the common interest doctrine should apply to protect the communications between Liberty and Alfred Road, insurer and insured, as against third parties. By all accounts, Liberty and Alfred Road fully cooperated in the defense of the Underlying Litigation, freely exchanging information for three years until the divergence of interest on July 8, 2011. Although the interest of insurer and insured is not identical when there has been a reservation of rights, the insurer and the insured should be able to communicate freely with respect to the litigation to the extent of their common interest without fear that the plaintiff in a subsequent reach and apply litigation could seek discovery of those communications. To hold otherwise would hamstring an insured in defense of claims against it and significantly jeopardize the opportunity for settlement of the litigation. *See Alit (No. 1) Ltd. v. Brooks Ins. Agency*, No. 10-2403 (FLW), 2012 U.S. Dist. LEXIS 38144, at *30-*31 (D.N.J. Mar. 21, 2012) ("it would be contrary to the very purpose of the common interest doctrine . . . to hold that the sharing of information [by insured and insurer] in order to defeat a common adversary would then require disclosure of those shared communications to that common adversary").

Kohl's argues that documents sent to Liberty's insurance adjuster by Alfred Road's attorney do not qualify as privileged communications because the communications are from a lawyer to a representative of a client, rather than a representative of the client to a lawyer as expressly stated in the rule. *See* M.R. Evid 502(b)(3). Notwithstanding Kohl's technical argument, the court concludes that the better view of the scope of the common interest doctrine (or allied lawyer doctrine) is in the Restatement: "Under the privilege, any member of a client set — a client, the client's agent for communication, the client's lawyer, and the lawyer's agent . . . can exchange communications with members of a similar client set." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76 cmt. d. Thus, communications between

11

Attorney Herzer and Liberty's insurance adjuster are still within the scope of the attorney-client privilege.

Accordingly, to the extent documents in Liberty's file in the Underlying Litigation (document request item 1) or documents related to Liberty's assessment of the Underlying Litigation (document request item 5) contain confidential communications between Liberty's counsel and Liberty, or Liberty's counsel to Alfred Road or Alfred Road's counsel, those documents are protected by the attorney-client privilege. The Court addresses the attorney-client privilege with respect to the documents requested of Alfred Road and item 2 of documents requested of Liberty in the next section, and item 12 in the discussion of work product.

C.      Effect of One Party's Waiver of Attorney-Client Privilege in a Common Interest Arrangement

As noted, Alfred Road has decided it "will not invoke a privilege as to those materials in its possession that its defense counsel provided to Liberty [or Liberty's representatives] during the course of defense counsel's representation" of Alfred Road in the underlying litigation. (Def.'s M. Quash Exh. C.) Alfred Road is within its rights to do so. As explained by the First Circuit,

> a party always remains free to disclose his own communications. Thus, the existence of a [common interest] does not increase the number of parties whose consent is needed to waive the attorney-client privilege; it merely prevents disclosure of a communication made in the course of preparing a joint defense by the third party to whom it was made.

*In re Grand Jury Subpoena*, 274 F.3d 563, 572-73 (1st Cir. 2001); *see also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76 cmt. g ("In the absence of an agreement to the contrary, any member [of a common interest arrangement] may waive the privilege with respect to that person's *own* communications." (emphasis added)). Because Alfred Road is not asserting any privilege as to materials provided to Liberty during the course of Herzer's representation of

12

Alfred Road in the Underlying Litigation, Alfred Road has waived its attorney-client privilege to documents only to the extent they represent Alfred Road's own communications to Liberty. The partial waiver by Alfred Road does not apply to communications between Attorney Herzer and Alfred Road or to communications by Liberty to Attorney Herzer or Alfred Road.

Ostensibly, Alfred Road's waiver only applies to the following disputed discovery requests made by Kohl's: items 1 and 2, in whole or in part, of the requests made to Liberty; and items 1, 2, 6, and 10, in whole or in part, of the requests made to Alfred Road. Any communications within these categories, however, between Attorney Herzer and Alfred Road or any communications by Liberty to Attorney Herzer or Alfred Road are protected by the attorney-client privilege based on the common interest or allied lawyer doctrine.

Because Liberty has not filed a privilege log, the Court cannot rule definitively on the attorney-client privilege for document requests 5 and 12 submitted to Liberty or requests 3, 4, 5, 7, 8, and 9 submitted to Alfred Road. Nevertheless, the Court notes that it is unlikely that the attorney-client privilege would apply in full to requests 3 and 4 of Alfred Road. The Court thus moves on to the second privilege asserted.

## II.  Work Product Privilege

The purpose of the work-product privilege and associated rule is to "promote the adversary system by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation." *Springfield Terminal Ry. Co. v. Dep't of Transp.*, 2000 ME 126, ¶ 19, 754 A.2d 353. Pursuant to M.R. Civ. P. 26(b)(3),

> a party may obtain discovery of *documents and tangible things* . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial

13

equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

(Emphasis added). Because the work-product privilege applies only to documents and tangible things, "discovery of work product will be denied if the party seeking discovery can obtain the desired information by taking the deposition of witnesses." 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2025 at 538 (3d ed. 2010); *accord Eoppolo v. Nat'l R. Passenger Corp.*, 108 F.R.D. 292, 294 (E.D. Pa. 1985) ("The work product doctrine furnishes no shield against discovery by interrogatories or by depositions of the facts that the adverse party has learned or the persons from whom such facts were learned.); 2 Harvey, *Maine Civil Practice* § 26.6 at 641-42 (3d ed. 2011) (explaining relevant facts known to a party or its attorney are discoverable through interrogatory).

"A document is protected as work product only if it was created because of the party's subjective anticipation of future litigation," and only if the "preparer's anticipation of litigation [was] 'objectively reasonable.'" *Springfield Terminal Ry. Co.*, 2000 ME 126, ¶ 16, 754 A.2d 353. "[W]ork product protection is provided against 'adversaries,' so . . . disclosing material in a way inconsistent with keeping it from an adversary waives work product protection." *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997). The party seeking to protect material from disclosure has the burden of establishing that it is work product. *Springfield Terminal Ry. Co.*, 2000 ME 126, ¶ 15, 754 A.2d 353.

Finally, unlike the attorney-client privilege, the work-product privilege can be overcome by making the following showing: "(1) the party must show 'substantial need,' seemingly something more than relevancy sufficient to satisfy [M.R. Civ. P.] 26(b)(1), (2) the party would suffer 'undue' hardship, and not merely some expense or inconvenience, to obtain (3) the

14

'substantial equivalent.'" 8 FEDERAL PRACTICE AND PROCEDURE § 2025 at 538 (quoting Fed. R. Civ. P. 26(b)(3)). Nevertheless, "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation" must be protected. M.R. Civ. P. 26(b)(3).

A.   Liberty's adjuster's file[4] and other documents in Liberty's possession not covered by the attorney-client privilege

Kohl's concedes that the adjuster's file is work product, but asserts it has substantial need of the documents because of Liberty's collusion defense. *See Harriman v. Maddocks*, 518 A.2d 1027, 1034 (Me. 1985) (deciding that an insurance adjuster's case file and investigation is conducted in preparation of litigation, but is subject to discovery based on a Rule 26(b)(3) substantial need showing). Kohl's anticipates the file will contain evidence regarding Liberty's notice of Alfred Road seeking settlement without Liberty's consent, the valuation of Kohl's claim by Liberty, and the reasonableness of the settlement. Without these documents, Kohl's argues that "there may be no other method of determining the basis of Liberty's settlement position in the underlying litigation" and that Liberty should not be allowed to use work-product as a shield after putting collusion and fraud into issue. Kohl's also notes that it will be difficult to take the adjuster's deposition without the claims file.

Liberty asserts that because Kohl's can and will take a deposition of its adjuster, it cannot obtain the desired documents because it has ability to obtain the "substantial equivalent." Liberty also argues that valuation of the claim would be protected as a mental impression, conclusion, opinion, or legal theory of the case.

Although Kohl's desire for the adjuster's file is plain, the Court concludes that Kohl's has not shown it cannot achieve its objective through other methods of discovery and has not met its

---

[4] No party is asserting or has argued that the attorney-client privilege protects the adjuster's file.

15

burden to overcome work-product protection based on substantial need. Accordingly, the Court concludes that the adjuster's file is protected as work product.

With respect to document requested in items 1, 2, and 5, to the extent the documents were *not* created by Alfred Road, there is no question that the documents sought were prepared in anticipation of litigation and the Court views these as requests as for Liberty's protected work product.

B. Documents in the possession of Alfred Road

With respect to the documents requested from Alfred Road, similar to its arguments with respect to attorney-client privilege, Kohl's argues that the documents prepared by Alfred Road's counsel are not protected work product because Alfred Road was the client and the documents were not created for the benefit of Liberty Mutual. Liberty reasserts its arguments regarding the common interest privilege in its work product arguments. Case law indicates that the common interest doctrine applies equally, and perhaps with greater effect, to work product as it does to confidential communications when there is a common interest. *See In re Lindsey*, 158 F.3d 1263, 1282 (D.C. Cir. 1998); *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (2d Cir. 1990); *Griffith v. Davis*, 161 F.R.D. 687, 692-94 (C.D. Cal. 1995); *see also* 2 EPSTEIN, ATTORNEY-CLIENT PRIVILEGE, pt. 2, § VII(C)(2) ("disclosure between parties that have common financial interests are sufficient to protect the work-product privilege, even if such would not be sufficient to protect the attorney-client privilege"). Similar to the attorney-client analysis, the Court concludes that documents exchanged between Alfred Road and Liberty during the period of common interest are protected by work product to the extent the privilege applies.

Here, there is no question that the documents sought from Alfred Road's counsel were prepared in anticipation of litigation. Even the requests themselves frame the documents sought

16

as those related to the "Underlying Litigation." Nevertheless, Kohl's argues that even if the privilege applies, it has substantial need of the documents. In the words of Kohl's, because Liberty has asserted collusion, the documents in question "would provide direct evidence of the lack of collusion between Kohl's and Alfred Road" and "may well provide the best evidence available to counter Liberty's collusion defense." Kohl's anticipates the documents will contain evidence regarding Liberty's notice of Alfred Road seeking settlement without Liberty's consent, the valuation of Kohl's claim, and the need for meaningful participation by Liberty in the settlement process. Last, Kohl's asserts that it will suffer undue hardship without the documents because it cannot get them anywhere else.

Similar to the adjuster's file, the Court concludes that Kohl's has not satisfied its burden of showing it cannot achieve its objective through other methods of discovery and has not met its burden to overcome work-product protection based on substantial need. The Court also notes that some of the documents requested by Kohl's appear to be the protected "mental impressions, opinions, or legal theories of an attorney or other representative of [Liberty] concerning the [Underlying Litigation]", specifically document request numbers 5, 7, 8, 9, and 6, to the extent the documents in item 6 may in any way include, incorporate, summarize or refer to materials prepared by or for Liberty in connection with the mediation in the Underlying Litigation. *See* M.R. Civ. P. 26(b)(3). Accordingly, the Court concludes that the bulk of the documents in these requests are protected work-product, with a small subset subject to the foregoing waiver analysis and ruling.

C.    Waiver

As noted above, Alfred Road has decided it "will not invoke a privilege as to those materials in its possession that its defense counsel provided to Liberty [or Liberty's

17

representatives] during the course of defense counsel's representation" of Alfred Road in the underlying litigation. (Def.'s M. Quash Exh. C.) Whereas, the effect of the waiver of one party to a common interest arrangement is clear as to the attorney-client privilege, the effect of a waiver is less clear as to work product. Notably, the underpinnings of the two doctrines are decidedly different. Whereas the attorney-client privilege exists to encourage clients to make full disclosure to their attorneys, *see Corey*, 1999 ME 196, ¶ 18, 742 A.2d 933, work product protection exists to promote the integrity of the adversary system so that an attorney's efforts will not fall into the hands of an adversary. Alfred Road seeks to waive its privilege and disclose documents it prepared in anticipation of litigation to a former adversary, Kohl's, but Liberty asserts a common interest privilege as to those work product materials. The Court is not prepared to rule on the effect of Alfred Road's waiver or the application of the common interest privilege to work product materials without briefing on this discrete issue by the parties.

Accordingly, should Liberty and Kohl's continue to disagree over whether Alfred Road can turn over to Kohl's those limited documents to which Alfred Road is not claiming a privilege, the parties shall notify the Court in writing and, at the same time, submit to the court: (1) a privilege log or privilege logs of the documents still in dispute, and (2) simultaneous ten-page memoranda (a) citing and analyzing applicable authorities on the effect of one party's waiver of work product privilege as to documents it prepared and shared with another member of a common interest arrangement, and (b) that authority's particular application to the facts of this case.

## CONCLUSION

Based on the foregoing analysis, it is ORDERED, as follows:

A.     With the exception of the documents to which Alfred Road is not claiming a privilege:

18

(1) Kohl's Motion to Compel is DENIED; and

(2) Liberty's Motion to Quash is GRANTED.

B.     With respect to the documents to which Alfred Road is not claiming a privilege, the court concludes these documents are not protected by the attorney client-privilege.

C.     If the parties continue to disagree over whether Alfred Road can turn over to Kohl's those limited documents to which Alfred Road is not claiming a privilege, then on or before November 2, 2012, the parties shall notify the Court of such disagreement in writing and, at the same time, submit to the court:

(1) A privilege log or privilege logs of the documents still in dispute, and

(2) Simultaneous ten-page memoranda (a) citing and analyzing applicable authorities on the effect of one party's waiver of work product privilege as to documents it prepared and shared with another member of a common interest arrangement, and (b) that authority's particular application to the facts of this case.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this order into the docket by reference.

Date:    October 11, 2012

_____
Chief Justice, Maine Superior Court

Entered on the Docket: 10·11·12
Copies sent via Mail ___ Electronically ✓

19

BCD-CV-12-13

Kohl's Department Stores, Inc.,
                              Plaintiff

v.

Liberty Mutual Insurance Co.
                              Defendant


Plaintiff's Attorney:

John Hobson, Esq
Perkins Thompson
One Canal Plaza
PO Box 426
Portland ME  04112

Defendant's Attorney

Daniel Snow, Esq.
Louise Thomas, Esq.
Pierce Atwood
Merrills Wharf
254 Commercial St
Portland ME  04101